MEDORA E. C. LAKER, Respondent, v. THE
ROYAL FRATERNAL UNION, Appellant.

St. Louis Court of Appeals, May 27, 1902.

1. **Fraternal Benefit Societies: EVIDENCE.** The evidence exam-
ined, and it is held that the defendant, the Royal Fraternal Union
is a fraternal benefit society, and is not an old line insurance
company.

2. ———: ———: CERTIFICATE OF INSURANCE: CONSTITU-
TION AND BY-LAWS: CONSTRUCTION OF CONTRACT OF
INSURANCE. Where one applying for a benefit certificate of
insurance in a fraternal mutual insurance company agrees that
the constitution and by-laws of the order, with all amendments
theretofore or thereafter made, should be made a part of the
benefit certificate, the constitution and by-laws of the order by
this agreement, are made a part of the certificate and must be read
into it to make up the complete contract of insurance.

3. ———: ———: ———. Ordinarily when the terms of a bene-
fit certificate and the by-laws of a fraternal benefit society conflict,
the order will be deemed to have waived the by-laws and the cer-
tificate of insurance will control.

Vol 95 app—23

4 ——: ——: ——. But when the laws of the order are referred to by apt words in the certificate of insurance, and made a part of the policy of insurance, the certificate and the laws together make out the contract of insurance and the whole are to be construed together in an endeavor to ascertain the intention of the parties.

5. ——: ——: ——. By-laws which qualify the terms of the certificate of insurance in an ambiguous manner are to be construed most favorably to the insured.

6. ——: ——: ——. In the case at bar, by reading the certificate, the applicant would naturally conclude that his life was insured in the sum of two thousand dollars, for the benefit of his wife, and it should be given that construction, if from the language of the certificate and by-laws it is left in doubt whether or not that such was the contract, and it is left in doubt whether the contract of insurance is for the payment of two thousand dollars, or a stipulated sum to the beneficiary on the death of the insured, to be drawn from the benefit and reserve funds, and if these prove inadequate, then the balance to be raised by additional assessment, as authorized by section 108 of the by-laws, or whether a pro rata distribution of the benefits and benefit reserve fund as provided by section 183 of the by-laws, furnish the measure of the insurer's liability, or. whether or not that liability can be discharged by the payment of the amount realized from one assessment, for the month in which the member died, or the members of the division to which he belonged, as provided by section 209 of the by-laws; *held*, that in this ambiguous condition of the contract as to the amount due on the certificate, that construction which is most favorable should be given the beneficiary, and it is held that she is entitled to the full amount of the insurance.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*Vaughan & Coltrane* for appellant.

In construing a contract effect should be given to each and every part of the contract, so as to reconcile and uphold all portions of the same, if it can be done. Shickle v. Chouteau, etc., Co., 10 Mo. App. 241, 84 Mo.

161; Calloway v. Henderson, 130 Mo. 77; Ellerbe v. Barney, 119 Mo. 632; Frame v. Sovereign Camp, 67 Mo. App. 127; Goodwin v. Prov. Sav. Life Ass'n, 59 Am. St. Rep. 411.

*Millard R. Powers* and *Carlos S. Hardy* for respondents.

(1)    The learned judge of the circuit court decided that appellant was an insurance company, because the monthly payments and mortuary benefits were definite sums.    In order to do this, he had to isolate these two items from the entire plan upon which appellant is operated.    He followed the false lead of many another judge by setting up a false premise, and then arriving at an erroneous conclusion.    He held that the power to make by-laws did not exist, and that the society and members were dealing with each other as separate units.    In thus deciding, he ignored the plain provisions of the statute governing such societies and the charter of appellant as well as the plan adopted and set forth in the by-laws.    (2)    Both the statute and charter, as well as the by-laws, application and benefit certificate, were a part of the contract of membership, and it was error to exclude one or more of them unless a conflict existed between them.    The mere fact that the by-laws provided for definite monthly payments, and the benefit certificate promised a fixed sum, did not transform the society into an insurance company.    The statute and charter can not be affected by a by-law.    If the by-law and benefit certificate apparently were in conflict with the provisions of the statute and charter, it was the duty of the court to have ignored the conflicting provisions, and held that under the statute and charter, appellant must be considered a fraternal beneficiary society.    (3)    In effect, the court held that after being incorporated as a fraternal mutual benefit society, under the statute relating to such organizations, it was possible for the managers to adopt by-laws

and enter into contracts under which the corporation might do a class of business not permitted under the charter or statute.    Such is not the law.

BLAND, P. J.—The suit is to recover the fourth installment of one hundred and twenty-five dollars, claimed to be due plaintiff as the beneficiary in the benefit certificate issued by the defendant to Frederick W. Laker.    The contents of the certificate, material to this controversy, are as follows:

### "DIVISION TWO.

### "Read Your Certificate.

### "BENEFIT CERTIFICATE.

*"Royal Fraternal Union of St. Louis, Mo.*

### "No. 3712.

"Assessment $4.30.                          Age 53 years.
                    "$2,000.
"Date, April 1, 1898.
"Member, Frederick W. Laker.
"Address, Springfield.
"State, Mo.
"National Council No. One.

"When writing the home office with reference to this certificate, always give the number. In case of death or disability from accident or sickness, immediate notice must be given the home office.

### "DIVISION TWO.

"Number 3712.                          Age 53 years.
   *"The Royal Fraternal Union of St. Louis, Mo.,* Hereby certifies that in reliance upon the representations, statements and agreements contained in the application of Frederick W. Laker of Springfield, Mo.,

a member of National Council No. One of St. Louis, State of Missouri, by occupation a locomotive engineer, passenger train, he is accepted as a beneficiary member of this order in class D, under the conditions hereinafter specified, and that he is entitled to the following benefits, to be paid from the benefit or benefit reserve fund, as provided in the by-laws, during the time this certificate is maintained in continuous force and effect, viz.:

"Fifth.—To be paid to Mrs. Medora E. C. Laker (his wife), if surviving, otherwise to the legal representatives of the member, at the home office of said order, in the city of St. Louis, Missouri, upon the receipt of satisfactory proof of the death of the member, together with the surrender of this certificate, two thousand ($2,000.00) dollars.

"All benefits accruing under this certificate, except monthly, sick and accident benefits, shall be payable on the annuity system, as follows: one hundred and twenty-five dollars shall be paid quarterly until the full amount of the benefit shall have been paid, provided that should the death of the member occur after five years from the date hereof, then in such case the death benefit will be paid in one sum.

"Sixth.—A written notice from the member or his representative, and a certificate from the attending physician, stating the time, place, and manner and nature of injury, sickness or death, must be received at the home office of the order in St. Louis, Missouri, within ten days of the date of injury, commencement of sickness, or within sixty days after the death of the member, as conditions precedent to recovery. No sick or accident benefits will be paid for any time prior to the date of mailing letter and said notice or attending physician's certificate. Monthly, sick and accident benefits will not be paid in excess of twenty weeks during any membership year, neither will both sick and accident benefits be paid for the same period, or to

the member on more than one certificate at the same time. All benefits for which the order is liable shall be payable only after satisfactory, direct and affirmative proofs have been received by the order at its office in St. Louis, Missouri.

"Seventh.—This certificate shall not take effect until after payment in cash of the certificate fee and one assessment, and delivery hereof to the member while he is alive and in good health, and shall continue in force only so long as all assessments are fully paid. It is issued in consideration of the payment of the certificate fee, and the further payment of one assessment of four and thirty-hundredths dollars, payable in advance, without notice, on or before the last weekday of each month at the home office of the order in St. Louis, Missouri, or to the authorized local treasurer or collector; the first assessment to apply in payment for the month in which this certificate is issued, and is subject to the agreements and statements contained in the member's application, all of which we agree to be warranties, and the conditions and statements on the back hereof, and the constitution and by-laws of the order, now in force or hereafter enacted, all of which are made a part of this certificate.

"In testimony whereof, the Royal Fraternal Union has caused this certificate to be signed by its supreme president, supreme secretary and certificate writer, and has hereunto attached its seal, at the city of St. Louis, State of Missouri, this first day of April, at 12 o'clock noon, A. D. eighteen hundred and ninety-eight.              "A. PRICE,
                                    "Certificate Writer.
"F. H. PICKERELL,
       "Supreme Secretary.    "JOHN N. DALBY,
                                    "Supreme President."

"3.    Privileges and Requirements.—While it is the custom and privilege of the order to pay just claims

immediately on presentation of acceptable and proper proofs of the disability or death of a member, yet the order reserves the right, if it so desires, to take such a reasonable time as is necessary to properly investigate the merits of a claim. It is agreed that no claim shall be valid against the order unless final proofs thereof are received at the home office of the order in St. Louis, Missouri, within six months from the date of the death. of said member, or within one month from the date the disability ceases for which indemnity is claimed, and that three months shall be allowed, after the receipt of said proofs, for the investigation of said claim by the order, if it so desires, during which period no proceedings shall be commenced thereon against said order; and it is agreed that all claims against the order upon this certificate shall be deemed to be waived and shall be invalid for any purpose unless the matter shall be submitted to arbitration in the manner prescribed in the by-laws of this order, within six months after receipt of final proof of the claim. No suit at law on this certificate shall be begun or maintained unless instituted within sixty days next succeeding the adjournment of the supreme council, next following the decision of the arbitration committee. All claims for benefit on this certificate shall require affidavits of the claimant, attending physician, undertaker, and such others as are clearly necessary to establish the claim, and such affidavits shall be on the forms of blanks furnished by the order, and all questions thereon are required to be fully answered.''

Defendant pleaded two special defenses: first, that the plaintiff's claim had not been submitted to arbitrators as provided for by the certificate, constitution and by-laws of the defendant order; second, by-law No. 209, which reads as follows, to-wit:

''Section 209. The liability of this order as to the amount of death benefit due in any division shall not exceed the amount of one assessment actually realized

for the benefit fund on the membership in force in such division for the month in which the death occurs, and not to exceed the amount named in the benefit certificate as being due, or proper claim thereunder, and is to be paid under the conditions specified in the benefit certificate,''

which the answer alleges was in force when the benefit certificate was issued to F. W. Laker and that it entered into and formed a part of the contract of insurance; that on March 23, 1898, said by-law was duly amended by the supreme trustees of the order and as amended reads as follows:

"Section 209 (amended). The liability of this order as realized for the benefit fund from the membership in such division for the month in which the death occurs, and not to exceed the amount named in the benefit certificate, and such sum shall be the full amount of the liability of this order, and it is to be paid under the conditions specified in the benefit certificate and these by-laws," and

"That said Frederick W. Laker, for himself and on behalf of his beneficiary, assented and agreed to its terms and conditions. That the amount of one assessment actually realized for the benefit fund from all the membership in force in division two for the month in which said Frederick W. Laker died, to-wit, September 20, 1899, amounting to $425.74; that defendant has paid to plaintiff $375 and that plaintiff ought not to have or recover more than the difference between said $425.74 and $375, namely, $50.74.''

There was a replication denying the new matter.

Plaintiff testified that she was the wife of Frederick W. Laker and the beneficiary in the insurance certificate; that her husband died on September 20, 1899. It was admitted that the proofs of death required by the policy were made in due and proper form

and that Frederick W. Laker paid all dues and assessments up to the date of his death. It was shown by the testimony of plaintiff's attorney and by the letters of defendant's secretary, addressed to plaintiff and to her attorney, that the defendant in October, 1899, acknowledged a liability on the certificate of insurance but claimed that the extent of its liability was to pay four hundred and twenty-five dollars and seventy-four cents. This was the amount of the assessment for the death benefit fund for the month of September, 1899, and derived from the membership of division No. 2 of the order, of which division F. W. Laker was a member at the time of the issuance of this certificate and at the date of his death.

Defendant read in evidence the articles of incorporation of the order which are as follows:

"Know all men by these presents: That we, whose names are hereunto subscribed desiring to form a corporation under the laws of the State of Missouri, and more particularly under the provisions of the Revised Statutes of the State of Missouri, A. D. 1889, chapter forty-two, article ten, do hereby adopt the following articles of agreement as organic regulation for ourselves, our associates and successors:

"Third. The purpose and scope of the society shall be as follows: The association together, in supreme and subordinate councils, of all suitable persons of good moral character with a view to mutual improvement in education, moral virtue and ethical development; to afford the members congenial society and social intercourse; to cultivate right living and good citizenship; to inculcate charity, benevolence and promote fraternity and mutual co-operation and assistance; to provide for the relief and aid of members and their families, widows, orphans or other kindred dependents of deceased members, and by assisting such as may be sick or disabled from the proceeds of assessment upon the members of the society, and to that end

to issue to the members beneficial certificates payable at such times and in such manner as shall be provided in said beneficial certificates, and do such other things as shall be provided by the laws of this State.

"Fourth. The business of the society shall be managed and conducted by a board of three trustees, who shall be known as the supreme trustees, who shall enact and adopt a constitution and by-laws and prescribe the time and manner of meeting and of electing officers. The supreme trustees shall also adopt a ritual of ceremonies, prescribing the form of the initiation of its members; the opening and closing meetings of the supreme and subordinate councils; the installation of officers, and the burial service of its deceased members.

"Fifth. The first board of supreme trustees shall consist of John H. Allen, J. F. D. Geiger and W. B. Addington, who shall hold office for two years and until their successors are duly elected and installed.

"Seventh. The members of the society at any regular meeting of the supreme council, may amend or repeal any by-law enacted by the board of supreme trustees, or may enact new by-laws,"

and proved by the secretary of the defendant the authenticity of certain by-laws, among them No. 209, and No. 209 as amended, both of which are set out in the answer.

Plaintiff made various objections to the introduction of the constitution and by-laws as evidence, and they were excluded by the court for the following reasons announced by the court from the bench:

"The Court: This minute book, I think, is perfectly competent if the matters contained in it are a defense, or tend to make a defense. I hold that this is just a plain contract of insurance, so much money payable monthly, and so much to be paid upon death, and that these trustees have no power to make a by-

law there of this kind (the one objected to), and that it does not affect this contract made with Frederick W. Laker; they do not say they will pay him an amount not exceeding $2,000, but say they will pay his wife $2,000 at his death, and while a member of a corporation is in some sense a part and parcel of the corporation, still under this application and this certificate I hold that he is dealing with them as a separate entity within the plain wording of the application and certificate. The objections are sustained.''

Defendant then read in evidence the following application by Laker for insurance, to-wit:

''Application for Membership and Beneficiary Certificate in the Royal Fraternal Union of St. Louis, Mo.''

''I, Frederick W. Laker, having carefully examined the principles, constitution and by-laws and benefit certificate of the Royal Fraternal Union of St. Louis, Mo., and this application blank, hereby make application for membership in Council No. 1, located at St. Louis, Mo., and for a beneficiary certificate division No. 2, for $2,000, and agree to pay the certificate fee and one advance assessment, etc., etc. I understand that the amount of each withdrawing member's share of the reserve fund is not fixed, but estimated.

''14. Beneficiary, Medora E. C. Laker; relationship, wife; residence—Springfield, Mo.

''18. Do you agree, where any doubt exists as to the validity of your claim, to the reference of the matter to a committee of three qualified physicians, to be composed of your attending physician, a second chosen by the order and the third to be chosen by these two, and that the decision of this committee shall in all cases be final, and that you will not appeal from it, except as provided in the by-laws of the order? Yes.

''19. It is hereby agreed that all the answers and statements in this application, whether written by the applicant or not, are warranted to be full, complete and

true, and this agreement and the constitution and by-laws of the order, with all the amendments heretofore or hereafter made, together with all statements in this application, are hereby made part of any benefit certificate that may be issued hereon. That if any of the answers and statements made are not full, complete and true, or if any condition or agreement shall not be fulfilled as required or agreed, then the certificate issued thereon shall be null and void, and all money paid thereon shall be forfeited to said order, etc., etc.

"This application forwarded by A. T. Sims, who acted as my agent.

"FREDERICK W. LAKER."

Defendant offered the printed constitution and by-laws of the order as a whole, having first shown that they had been duly adopted. The court excluded them on the ground that they were irrelevant.

The excluded evidence shows that defendant was incorporated by an order of the St. Louis Circuit Court on February 25, 1897. The articles of incorporation show that the order was organized for the purpose of the mutual improvement of its members and mutual co-operation and assistance, with the authority to issue "benefit certificates payable at such times and in such manner as shall be provided in said beneficiary certificates." The business of the order is managed by a board of trustees to whom power is given to enact and adopt a constitution and by-laws and to adopt a ritual of ceremonies for the initiation of members, etc.; to repeal by-laws and make new ones. Local councils corresponding to the lodge systems are provided for, which are required to hold regular meetings on the day and hour fixed by the by-laws. None but members of the order can hold a beneficiary certificate. Social members are not required to contribute to the benefit fund of the order and they have no voice in the management of the same. The supreme governing body

of the order is the supreme council, which has power to approve, reject or amend by-laws and to make new ones. On November 23, 1897, the order adopted a new constitution and a complete set of by-laws with the evident purpose of availing itself of the benefits of the act entitled "Fraternal Benefit Associations," approved March 16, 1897 (Acts of 1897, p. 132). The beneficiary members of the order are divided into classes, presumably on account of the difference in age and in the degree of hazard incident to the different occupations of the members.

It is evident from the foregoing that the defendant is a fraternal benefit society, and the circuit court erred in holding the certificate of insurance to be an old line insurance policy and should have admitted the constitution and by-laws of the order in evidence.

Defendant showed the September, 1899, dues from the members of division No. 2 (the class in which Laker was insured) to be four hundred and twenty-five dollars and seventy-four cents, and that of this total amount it had paid to plaintiff three hundred and seventy-five dollars.

The court peremptorily instructed the jury to find for plaintiff and to assess her damages at one hundred and twenty-five dollars. If the constitution and by-laws had been admitted in evidence, would it have been error for the court to have peremptorily instructed the jury to find for the plaintiff? is the principal question in the case. If defendant's liability is to be measured by by-law No. 209, the instruction was clearly erroneous. If, on the other hand, its liability is fixed by the terms of the certificate of insurance, independent of the by-law, the instruction was correct. If the certificate stood alone there could be no question but that the defendant would be liable for the full amount of the insurance, but in the application for insurance as well as in the certificate itself, Laker agreed that the constitution and by-laws of the order, with all amendments

theretofore or thereafter made, should be made a part of the benefit certificate. The constitution and by-laws of the order, by this agreement, were made a part of the certificate and must be read into it to make up the complete contract of insurance. Aloe v. Mutual Reserve Life Ass'n, 147 Mo. l. c. 574; Houck v. Frisbee, 66 Mo. App. l. c. 19; Niblack on Benefit Societies, section 136.

Ordinarily, when the terms of a benefit certificate and the by-laws of the order conflict, the order will be deemed to have waived the by-law and the certificate will control. Niblack on Benefit Societies, section 147; Davidson v. Old People's Mutual Benefit Society, 1 L. R. A. 482; Failry v. Fee, 83 Md. 83; Morrison v. Wisconsin O. F. Mut. L. Ins. Co., 59 Wis. 162; McCoy v. Northwestern Mutual Relief Ass'n, 92 Wis. 577. But when the laws of the order are referred to by apt words in the certificate and made a part of the policy of insurance, the certificate and laws together make out the contract and the whole are to be construed together in an endeavor to ascertain the intention of the parties. Bacon on Benefit Societies and Life Insurance, section 184. The certificate contains an unconditional promise to pay the beneficiary the sum of two thousand dollars, on the death of the member, in installments of one hundred and twenty-five dollars per quarter, provided the member should die within five years of the date of the certificate.

The charter of the order (section 4) provides for the issuance of benefit certificates to its members "payable at such time and in such manner as shall be provided in said benefit certificate." On November 13, 1897, by-law 108 was enacted. This provides for the payment of monthly assessments and confers authority to levy and collect such additional assessments as may be necessary to provide for the payment of accrued benefits and expenses. At the same time, section 183 of the by-laws was enacted, which requires

the supreme executive committee to pass on and ex-
amine all applications or claims for benefits, and to
order their payment, first from the benefit fund, and if
that is not sufficient, then out of the benefit reserve
fund, and provides that if both funds are insufficient
to pay all claims, they should then be paid pro rata.

On March 15, 1898, section 209 of the by-laws
was amended to read as follows:

''The liability of this order as to the amount of
death benefit due on any benefit certificate in any di-
vision shall not exceed the amount of one assessment
actually realized for the benefit fund from the mem-
bership in force in such division for the month in which
the death occurs, and not to exceed the amount named
in the benefit certificate, and such sum shall be the full
amount of the liability of this order, and is to be paid
under the conditions specified in the benefit certificate
and these by-laws.''

These by-laws were all in force at the date the
policy was signed and issued (April 20, 1898) and
must be read into the policy of insurance.

Under the enumeration of benefits secured by the
policy, the fifth clause provides in substance that on
the death of Laker in good standing and proofs of his
death, there shall be paid to his wife, Medora, two
thousand dollars. The provisions of the certificate,
independent of the by-law, plainly and unequivocally
provides for the payment of two thousand dollars to
his wife on the death of Laker.

By-law 108 confers the power of the governing
body of the order to levy and collect additional assess-
ments whenever it shall become necessary to provide
for accrued benefits and expenses. If there were no
other provisions found in the by-laws in respect to the
payment of death benefits, we would not hesitate to
say that defendant is liable for the full amount of the
insurance (two thousand dollars). By-law 183 seems
to have intended that additional assessments should

not be resorted to for making up deficiencies to pay accrued benefits. Yet it does not take away the authority to levy and collect them, nor does it appear from the evidence that the benefit fund and the reserve fund were not sufficient to meet this loss in full. The defendant offered these by-laws in evidence but did not offer to show that it had complied with either of them, nor that it did not have in these funds ample means to pay the policy in full and it is fair to presume that it did have the money in one or both of these funds and could have paid the benefit in full. By-law 209 is clearly in conflict with by-laws 108 and 103, and is in conflict with the terms of the policy itself. By-laws which qualify the terms of the certificate of insurance in an ambiguous manner are to be construed most favorably to the insured, under the general rule that when the language of the promisor may be understood in more senses than one it should be construed in the sense in which he had just reason to believe the promisee understood it. Potter v. Ins. Co., 5 Hill 149. By reading the certificate, Laker would naturally conclude that his life was insured in the sum of two thousand dollars for the benefit of his wife, and we are to give it that construction if from the language of the certificate and by-laws it is left in doubt whether or not such was the contract. Yeaton v. Fry, 5 Cranch 341; Metropolitan Life Ins. Co. v. Drach, 101 Pa. St. 278; Niagra Fire Ins. Co. v. Scammon, 100 Ill. 644.

It is left in doubt whether the contract of insurance is for the payment of two thousand dollars, as a stipulated sum, to the beneficiary on the death of the insured, to be drawn from the benefit and benefit reserve funds, and if these proved inadequate then the balance to be raised by additional assessments as authorized by section 108 of the by-laws, or whether a pro rata distribution of the benefits and benefit reserve fund as provided by section 183 of the by-laws furnishes the measure of the insurer's liability or whether

or not that liability can be discharged by the payment of the amount realized from one assessment, for the month in which the member died, on the members of the division to which he belonged, as provided by section 209 of the by-laws. In this uncertain and ambiguous condition of the contract as to the amount due on the certificate, we must give to it that construction which is most favorable to the plaintiff and hold that she is entitled to the full amount of the insurance. The trial court so adjudged and we affirm the judgment. *Barclay* and *Goode, JJ.*, concur.