THE STATE ex rel. CONTINENTAL INSURANCE COMPANY v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, November 30, 1921.

1. **CERTIORARI: To Court of Appeals: No Previous Ruling: Errors.** It is not the province of the Supreme Court upon *certiorari* to the Court of Appeals, based upon conflict of decisions, to determine whether the Court of Appeals erred in its application of rules of law to the facts stated in its opinion, but only whether upon those facts it announced conclusions of law contrary to the last previous ruling of the Supreme Court upon the same or a similar state of facts.

2. ———: ———: **Proximate Cause: Injury From Explosion: Leakage.** The defendant insurance company brought action on an insurance

policy ·:hich insured plaintiff's stock in trade against all direct loss or damage by sprinkler leakage except that the company should not be liable for (a) ''loss by fire, however caused,'' or (b) ''for loss resulting from leakage of water, if such leakage is caused directly or indirectly by fire,'' or (c) ''for loss caused by lightning, cyclone or explosion.'' The steel top of the hot well, connected with the boiler by a pipe, was blown off by an explosion, and in its course upward broke one of the water pipes of the sprinkler system, which immediately started the flow of water, resulting in the damage to plaintiff's property. The Court of Appeals held that the company did not exempt itself from loss by leakage by the clause which exempted it from ''loss caused by explosion,'' that the word ''explosion'' did not relate back to the word ''leakage,'' and that the explosion did not relieve the company from the payment of damages for the loss caused by the leakage. *Held,* upon *certiorari,* that said ruling does not contravene any prior decision of the Supreme Court, for the Supreme Court has not declared the law on a similar state of facts.

3. ———: ———: **Constitutional Questions.** On *certiorari* to the Court of Appeals, based upon conflict of decisions, the Supreme Court will not extend its inquiry beyond the opinion and any pleading, instruction or written instrument referred to therein; and an assignment that ''the effect of the decision of the Court of Appeals is to deprive relator of its property without due process of law, and to deny it the equal protection of the law,'' contrary to certain sections of the State and Federal constitutions, presents mere abstract propositions, suggestive of an appeal or writ of error rather than a writ of *certiorari,* and will not be considered where the opinion of the Court of Appeals does not disclose that such constitutional question was presented or involved.

## *Certiorari.*

WRIT QUASHED.

*Leahy & Saunders* for relator.

(1) The Court of Appeals correctly decided that the hot-well connected with the boiler exploded, and, therefore, the sprinkler leakage system was broken by an explosion. Webster's Dictionary, defining ''explosion;'' The Century Dictionary, defining ''explosion.'' The term explosion in a policy is to be contrued in its ordinary and popular sense, and the word explosion in such policy should be construed to mean what an ordin-

ary man would understand by such word. (2) The court in this case incorrectly contrued the term "cause," as applied to the exception, in the sprinkler leakage policy, exempting the company from liability for "loss caused by an explosion," and erred in holding that, while the explosion broke the sprinkler leakage system and caused the water to flow therefrom and damage plaintiff's goods, the explosion was not the proximate cause of the loss. Dixon v. Omaha & St. Louis Railroad Co., 124 Mo. 140, 149; Kane v. Pacific Railway Co., 251 Mo. 13, 27; Bellows v. Travelers Ins. Co., 203 S. W. 978; Fetter v. Fidelity & Casualty Co., 174 Mo. 256; Frisbie v. Fidelity & Casualty Co., 133 Mo. 32, 35; Insurance Co. v. Boon, 95 U. S. 117; Driskell v. U. S. H. & A. Ins. Co., 117 Mo. App. 362; Baehr v. Union Casualty Co., 133 Mo. App. 541; Hooper v. Standard Life & Accident Ins. Co., 166 Mo. App. 209; Goodes v. Order United Commercial Trav., 174 Mo. App. 330; Greenlee v. Kansas City Casualty Co., 182 S. W., 138, 192 Mo. App. 303. (3) The great weight of authority on the question of proximate cause in policies containing exceptions identical with this one is to the effect that the doctrine of proximate cause applies and cannot be frittered away by refinements of language and mysterious intervening causes which cannot be defined or even described. Insurance Co. v. Tweed, 7 Wall. 44; Approved in Atchison v. Calhoun, 213 U. S. 7; Frisbie v. Fidelity & Casualty Co., 133 Mo. App. 30; Cohn v. National Insurance Co., 96 Mo. App. 315; German-American Insurance Co. v. Hyman, 94 Pac. 27; Mitchell v. Potomac Insurance Co., 183 U. S. 42; German Fire Insurance Co. v. Roost, 45 N. E. 1097; Story v. The Sun Mutual Insurance Co., 91 N. Y. 103; St. John v. American Mutual Fire & Marine Insurance Co., 11 N. Y. 516; Evans v. The Columbian Insurance Co., 44 N. Y. 146; Hustice v. Phoenix Insurance Co. of Brooklyn, 175 N. Y. 292; Insurance Co. v. Boon, 95 U. S. 117; Hayward v. Insurance Co., 3 Keyes (N. Y.) 456; Hayward v. Insurance Co., 2 Abbot Decisions (N. Y.) 349;

Heuer v. Insurance Co., 144 Ill. 393; Hallander v. Jefferson Mutual Fire Insurance Co., 218 S. W. 419. (4) The plaintiff in this case was permitted to shift its position in the appellate court from the position taken by its pleadings and evidence in the trial court to the effect that there was no explosion, contrary to the following controlling decisions of this court. Dougherty v. Gangloff, 239 Mo. 660; Henry Co. v. Citizens Bank, 208 Mo. 226. In the trial court it contended there was no explosion; in the appellate court it contended there was an explosion. Renshaw v. Insurance Co., 103 Mo. 595; Maupin v. Southern Insurance Co., 220 S. W. 20. (5) The effect of the decision of the Court of Appeals is to deprive relator of its property without due process of law, and to deny it the equal protection of the law, contrary to Section 30 of Article 2 of the Constitution of Missouri, and to the Fourteenth Amendment to the Constitution of the United States, and to impair the obligation of the contract, contrary to Section 10, Article 1 of the Federal Constitution. Allgeyer v. La., 165 U. S. 578; Lochner v. New York, 198 U. S. 45. (6) Insurance policies are to be construed as ordinary contracts, though ambiguities therein are to be resolved against the insurance company, and exceptions are to be strictly construed against the insurance company. Renshaw v. Insurance Co., 103 Mo. 595, 604; Maupin v. Southern Ins. Co., 220 S. W. 20. (7) Insurance policies must be construed with reference to their subject-matter and a sprinkler leakage policy cannot by the legerdemain of construction be converted into a boiler insurance policy, a cyclone policy and an earthquake policy. No premium is paid the insurance company for assuming such risks, and the policy should not receive such a construction.

Leonard, Sibley & McRoberts and Shepard Barclay for respondents.

(1) The policy makes clear and plain distinction between direct and indirect consequences of facts men-

tioned as exceptions to the risk assumed of damage by leakage of water. When such distinction is expressed, the courts will give effect thereto. Ins. Co. v. Robinson, 64 Ill. 285 (explosion of lamp), cited and followed as authority in Missouri in. Renshaw v. Ins. Co., 103 Mo. 611; Straus v. Ins. Co., 94 Mo. 182. See aso Pac. Heating Co. v. Ins. Co., 9 Cal. App. Dec. 157, 158 Cal. 367; Winspear v. Ins. Co., 6 Q. B. Div. 42; Lawrence v. Ins. Co., 7 Q. B. Div. 216; Montgomery v. Ins. Co., 242 Pa. 86. (2) On the undisputed facts, the so-called "explosion" was not a direct cause of any damage by water; but only a secondary or indirect cause, and not within the exception. Renshaw v. Ins. Co, 103 Mo. 595; Ins. Co. v. Robinson, 64 Ill. 265; Heffron v. Ins. Co., 132 Pa. 580; Ins. Co. v. Willard, 164 Fed. 404, 212 U. S. 581; Ins. Co. v. Stanton, 191 Fed. 813; Joyce, Insurance (2 Ed.) sec. 2590; Ins. Co. v. Parker, 23 Ohio St. 85; Mfrs. Ind. Co. v. Dorgan, 58 Fed. 945; Ins. Co. v. Corlies, 21 Wend, 367; Briggs v. Ins. Co., 66 Barb. 325, 53 N. Y. 447; Vorse v. Ins. Co., 119 Iowa, 555; Montgomery v. Ins. Co., 242 Pa. 86. (3) The facts, which relator claims constitute an "explosion," were submitted to the jury in the trial court. Plaintiff contended in the Court of Appeals that the word "explosion" imports combustion in some form, which was absent here; citing on that point: Joyce, Insurance (2 Ed.) sec. 2768; Century Dictionary, "explode," p. 2083; Ins. Co. v. Rupard, 220 S. W. 538; Mill Co. v. North British Co., 139 Fed. 637; Fitzgerald v. Ins. Co., 62 N. Y. Supp. 824; Stanley v. West Ins., L. R. 3 Ex. 71; Babcock v. Ins. Co., 4 N. Y. 326; Bird v. Ins. Co., 224 N. Y. 47. But the learned opinion in the Court of Appeals held that the facts disclosed an "explosion" as matter of law. So respondents submit that relator has no ground to complain of that ruling. (4) The defendant had the burden of proof to maintain its plea that the loss was directly caused by facts within the exception of the policy. Ins. Co. v. Rupard, 220 S. W. 538. But defendant did not discharge the burden. The jury found against its

plea; so that, even if its plea had any support in the evidence, the adverse finding by the jury on its own instruction as to the "direct cause" of the damage would bar a reversal of that result. Gannon v. Gas Co., 145 Mo. 502; Johnson v. Grayson, 230 Mo. 394; Siedenkranz v. Lodge, 199 S. W. 451. (5) Ambiguity in a policy (as to liability of the insurer) should be construed favorably to the insured. Renshaw v. Ins. Co., 103 Mo. 611; Sutton v. Ins. Co., 208 S. W. 499; Ethington v. Ins. Co., 55 Mo. App. 129; Malin v. Ins. Co., 219 S. W. 143; Union v. Colehouse, 227 Ill. 565; Rieger v. London Co., 215 S. W. 920.

ELDER, J.—This is a proceeding in which relator seeks by writ of *certiorari* to review the decision of the St. Louis Court of Appeals and quash the judgment entered by that court in the case of American Paper Products Company, respondent, v. Continental Insurance Company, appellant, (relator herein).

The action brought was upon an insurance policy issued by relator to the aforesaid respondent, American Paper Products Company, insuring its stock in trade against *all direct loss or damage by sprinkler leakage,* except as provided in the policy, such proviso being as follows, to-wit:

"This company shall not be liable for loss by fire, however caused; nor for loss resulting from the leakage of water, if such leakage is caused directly or indirectly by fire; nor for such loss due to stoppage or interruption of any work in plant unless liability for such loss is specifically assumed herein; *nor for loss caused by* lightning (whether fire ensues or not), cyclone, tornado, windstorm, earthquake, *explosion* or blasting . . . nor for loss caused directly or indirectly by the fall or collapse of any building or any part thereof, unless such fall or collapse is caused by the accidental leakage of water from automatic sprinkler system, or the tanks supplying it." (Italics ours).

·The case was tried before a jury, in the Circuit Court for Lincoln County, and a verdict was returned in favor of the Paper Products Company for the amount of damage claimed, to-wit, $1,754.71, and for attorney's fees and damages for vexatious delay. After a *remittitur* of the items for attorney's fees and damages for delay, judgment was entered for $1,754.71. Upon appeal to the St. Louis Court of Appeals, this judgment was affirmed.

The facts in the case are thus stated in the opinion of the Court of Appeals:

"Plaintiff maintained at its plant an engine and boiler room in a one-story frame building, in the basement of which was stored the paper stock that was damaged by water. The building was equipped with an automatic sprinkler system, the sprinkler pipes being about one foot below the ceiling, which was twelve feet from the floor. At a certain degree of heat the sprinkler heads open, and under pressure water flows from the pipes and floods the building, thereby extinguishing the fire. About three feet from the steam boiler which was situated in this boiler room, and under the floor of the boiler room, embedded in the ground, was what is termed a 'hot-well,' the top thereof being about one foot under the surface. This hot-well is connected with the boiler by a pipe and is also connected with the sewer, its object being to change the water in the boiler, letting the impurities of the water that settle in the bottom of the boiler flow out through the hot-well into the sewer. This hot-well is constructed of iron and steel, having a steel top one-half inch thick and thirty inches in diameter, and which is fastened to the flanges of the hot-well by means of nine iron bolts one-half inch thick, the said top weighing from 150 to 200 pounds.

"In the early morning of February 20, 1916, this 150 or 200-pound steel top of the hot-well suddenly left its position, breaking and tearing away nine one-half-inch iron bolts, passed through the floor of the building, on through the roof thereof, tearing a hole five feet in

diameter, and landed upon a railroad track some thirty-five to fifty feet away.

"Plaintiff's expert witness testified on cross-examination that it would require a pressure of 495,000 pounds to release the top of this hot-well. In its course upward it broke the heavy timbers of the roof and also one of the water pipes of the sprinkler system, which immediately started the flow of water resulting in the damage to plaintiff's property. The accident is explained by expert witnesses for the plaintiff and also for the defendant as being caused by the cocks in the pipe connecting the boiler with the hot-well being suddenly opened and thereby allowing hot water from the boiler to be rushed with terrific power through the pipe into the hot-well, the water in the boiler being at a high temperature with a terrific power of steam behind it. The water in the hot-well being cool, and this volume of hot water from the boiler being suddenly forced into the cold water caused, according to defendant's witnesses, an explosion. By plaintiff's expert witness it is called a water hammer, which, in his opinion, might result in the cover of the hot-well being forced from its position, which was termed by the witness a rupture.''

Relator, in its petition for our writ, and in its brief, presents various matters wherein it claims that the opinion of the Court of Appeals conflicts with controlling decisions of this court. These, with the particulars pertinent thereto, we shall discuss in the course of the opinion.

I. Relator contends that the Court of Appeals "incorrectly construed the term 'cause,' as applied to the exception in the sprinkler leakage policy, exempting the company from liability for 'loss caused by an explosion,' and erred in holding that, while the explosion broke the sprinkler leakage system and caused the water to flow therefrom and 'damage plaintiff's goods, the explosion was not the proximate cause of the loss." As relevant to this contention, and as definitive

Conflict.

290 Mo.—24

of the term "proximate cause," learned counsel for re-lator cite Dixon v. Omaha and St. Louis Railroad Co., 124 Mo. l. c. 149; Kane v. Mo. Pac. Ry. Co., 251 Mo. l. c. 27; Bellows v. Travelers Ins. Co., 203 S. W. 978; Fetter v. Fidelity & Casualty Co., 174 Mo. 256.

That portion of the opinion of the Court of Appeals which is pertinent to the error assigned is as follows:

"The policy provided that the company shall not be liable for loss (1) by fire, however caused; (2) nor for loss resulting from a leakage of water, if such leak-age is caused directly or indirectly by fire; (3) nor for loss due to stoppage of work, etc.; (4) nor for loss caused by lightning, cyclone, . . . explosion, etc.; (5) nor for loss caused directly or indirectly by invasion, in-surrection, riot, etc.; (6) nor for loss by theft; (7) nor for loss caused directly or indirectly by the neglect of the insured to use all reasonable means to save and pre-serve the property; (8) nor for loss caused directly or indirectly by the falling or collapse of any building, etc.

"It should be noted that the part of the exception relied on and standing alone is an exemption from loss caused by an explosion, and not an exemption from loss resulting from leakage of water caused directly or in-directly by an explosion. If the clause read: 'Nor for loss by leakage of water caused directly or indirectly by explosion,' there would be no doubt of defendant's ex-emption from liability under the admitted facts of the case.

"While it is true that an insurance contract, like other contracts, is construed so as to give effect to all of its provisions if possible and its terms are accepted in their plain and ordinary sense, it is equally true that in construing exceptions inserted in the policy by the company which attempt to exempt it from certain speci-fied risks, such exceptions, in the event of doubt, are to be construed strictly against the insurer. [Laker v. Royal Fraternal Union, 95 Mo. App. 353, 75 S. W. 705; Joyce on Insurance (2 Ed.) p. 579.] Likewise, in the event of an ambiguity in the language used to limit the liability

of the insurer, the language is to be construed in favor of the insured and against the insurer. [Renshaw v. Ins. Co., 103 Mo. 611, 15 S. W. 945.]

"Bearing these rules in mind, is it clear that it was intended that the policy should not cover the loss by leakage of water caused by an explosion, when it provided 'nor for loss caused by explosion?' Shall the law by implication write into the exception the words 'by leakage' preceding the word 'cause?' We think not. When the company exempted itself in the same paragraph of exceptions from loss by fire, it very plainly stipulated against 'loss by fire, however caused, and from loss resulting from the leakage of water, if such leakage is caused directly or indirectly by fire.' But when it came to the exemption on account of an explosion, all reference to leakage is omitted and the language used is 'nor for loss caused by an explosion.'

"Having in mind the rules of construction in such cases, we think this exemption only covered such loss as the plaintiff's goods suffered directly by the explosion, and not the loss by leakage of water that followed the explosion, although such leakage of water was caused by the explosion.

"We are without authority in this State, but similar provisions in policies have been thus construed in other jurisdictions."

Following the latest rulings of this court, and as preliminary to a consideration of the question presented by relator, we hold that it is not our province to determine whether the Court of Appeals erred in its application of rules of law to the facts stated in its opinion, but only whether upon those facts it announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts. [State ex rel. American Packing Co. v. Reynolds, 287 Mo. 697; State ex rel. Peters v. Reynolds, 214 S. W. l. c. 122; State ex rel. Mechanics Amer. Natl. Bank v. Sturgis, 208 S. W. l. c. 462; Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072.]

Proceeding to an examination of the cases cited by relator in support of its insistence, we find that Dixon v. Omaha & St. L. Railroad Co., supra, involves the liability of defendant for the death of its engineer, caused by the collision of the train with a bull which had come on the track through a defect in the company's right-of-way fence, such defective fence being held to have been the proximate cause of the accident. Kane v. Missouri Pacific Ry. Co., supra, was a suit for personal injuries alleged to have been sustained through the derailment of an engine upon which plaintiff was acting as pilot. The ruling there announced was to the effect that to establish that the absence of splashers in the tank of the tender and of side bearings in the front trucks was the proximate cause of the derailment of the engine, it must have appeared with reasonable certainty that if they had been present the derailment would not have occurred, and the burden was on plaintiff to show that fact. Bellows v. Travelers Ins. Co., supra, holds that where an insured, in good health, was severely beaten by footpads in September, 1912, and there was evidence that the internal effects of the beating caused kidney trouble, which progressed until he died in June, 1913, the jury were justified in finding that death resulted, directly and independently of all other causes, from the effect of the injuries received. Fetter et al v. Fidelity & Casualty Co., supra, holds that where an insured in attempting to close a window lost his equilibrium and was thrown against a chair, causing a rupture of a kidney, from which rupture was produced a hemorrhage which caused death, and an autopsy revealed a cancerous condition of the kidney, it was for the jury to decide whether the cancerous condition resulted from the rupture or whether the rupture would not have occurred had there not been a previous weakened cancerous condition already existing. Frisbie v. Fidelity & Casualty Co., supra, is not reported as cited.

It is obvious that none of these cases involve facts analogous to the facts stated in the opinion of the Court

of Appeals under review. It is equally obvious that the rulings in those cases in no way conflict with the conclusions of law announced by the Court of Appeals. Nor from our investigation do we find any case wherein we have declared the law on facts similar to those here present. Accordingly, it follows that we are not called upon to determine whether the views of the Court of Appeals, as quoted, are correct or incorrect; therefore the point made is ruled against relator.

II.   Relator further urges: First, That ''the plaintiff was permitted to shift its position in the appellate court from the position taken by its pleadings and evidence in the trial court to the effect that there was no explosion,'' contrary to Dougherty v.

Constitutional Questions.

Gangloff, 239 Mo. l. c. 660, and Henry Co. v. Citizens Bank, 208 Mo. l. c. 226.   Second, That ''the effect of the decision of the Court of Appeals is to deprive relator of its property without due process of law, and to deny it the equal protection of the law, contrary to Section 30 of Article II of the Constitution of Missouri, and to the Fourteenth Amendment to the Constitution of the United States, and to impair the obligation of the contract, contrary to Section 10, Article 1, of the Federal Constitution.''

In so far as the opinion of the Court of Appeals, or any matter referred to therein, is concerned, these contentions are but abstract propositions presented as suggestive of an appeal or writ of error, rather than a writ of *certiorari*. We are not referred to any passage of the opinion wherein the shifting of positions by plaintiff is indicated or adverted to, nor does an examination of the opinion disclose how any constitutional question, State or Federal, is presented or involved. While there has been some diversity of opinion among the members of this court as to the scope of our review in *certiorari* proceedings when directed against the Courts of Appeal, we have not extended our inquiry beyond the opinion and any pleading, instruction, or written instrument referred

to therein. [State ex rel. Kansas City v. Ellison, 220 S. W. 498; State ex rel. Hayes v. Ellison, 191 S. W. l. c. 53; State ex rel. Heine Safety Boiler Co. v. Robertson, 188 S. W. l. c. 102.] Manifestly, therefore, the errors suggested by relator, are not for our consideration.

In passing upon the various matters urged by relator, we have adhered to the functions of a writ of *certiorari* as declared by this court in its latest pronouncements. Much that is pressed upon our attention is beyond our sphere of authority, when measured by the remedy sought to be invoked.

Our conclusion is that the writ in this case was improvidently granted and should be quashed. It is so ordered. All concur.