ROSA BEILE, Appellant, v. TRAVELERS PROTECT-
   IVE ASSOCIATION OF AMERICA, Respond-
   ent.

**St. Louis Court of Appeals, March 4, 1911.**

1. **ACCIDENT INSURANCE: Death by Accident: Fraternal Beneficiary Associations: "Accident" Defined.** "Accidental means," within an accident benefit certificate stipulating for the payment of a specified sum to the beneficiary in case of the member's death by accidental means, are those which produce effects that are not the natural and probable consequences of the act.

2. ————: ————: ————: **Death from Chloroform.** Whether death, caused by dilatation of the heart, resulting from chloroform administered by physicians preparatory to a surgical operation is "accidental," within an accident benefit certificate

stipulating for the payment of a specified sum in case of the death of insured by accident, is a question for the jury.

3. ———: ———: ———: ———. In order for the dilatation of the heart, caused by the administering of chloroform by physicians preparatory to a surgical operation and resulting in death, to have been the natural and probable consequence of the administering of the chloroform and therefore not an accident under an accident benefit certificate stipulating for the payment of a specified sum to the beneficiary in case of insured's death, it must have been a result that was expected or ought to have been expected, and this could not be unless insured knew of the defects in his heart or they were so apparent to the ordinary powers or means of perception that he ought to have known of them.

4. ———: ———: ———: **Death from Poison.** An exception in an accident benefit certificate, stipulating that insurer shall not be liable for injuries, fatal or otherwise, resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled, does not include medicine, though containing poison, administered in good faith to alleviate physical pain, if it results in unexpected and unintentional death.

5. ———: ———: ———: **Cause of Death: Jury Question.** In an action on an accident benefit certificate exempting insurer from liability for death caused wholly or in part by a bodily or mental infirmity, the jury must determine the cause of death, though scientific propositions are involved, and they may accept or reject the testimony of physicians.

6. ———: ———: ———: ———: **Bodily or Mental Infirmity: Burden of Proof.** A beneficiary suing on an accident benefit certificate, stipulating for the payment of a specified sum on the death of insured by accident and exempting insurer from liability for death caused wholly or in part by bodily or mental infirmity, has the burden of proving that insured's death was accidental, but where he makes out a prima facie case, the burden is on insurer to prove that death resulted from a cause within the exception.

7. ———: ———: ———: **Sufficiency of Evidence: Facts Stated.** Where, in an action on an accident benefit certificate, stipulating for the payment of a specified sum on the death of insured by accident and exempting insurer from liability for death caused wholly or in part by bodily or mental infirmity, plaintiff showed that insured was in apparent good health, that chloroform was administered to him preparatory to a surgical operation, that he died while the chloroform was being administered, that in the opinion of an attending physician the direct and proximate cause of death was acute dilatation of the heart im

mediately caused by the chloroform, and that insured's diseased condition did not contribute to his death, plaintiff established a prima case of death by accident.

8. ————: ————: ————: **Admission by Pleading.** In an action on an accident benefit certificate, where the answer, among other things, pleaded that insured's death was caused by a bodily and mental infirmity and disease and that defendant was exempt from liability for that reason, under a provision of the contract of insurance, a prior answer filed by defendant alleging that insured instantly died from the effects of administering chloroform and which did not suggest that his death was due in whole or in part to other causes, might be considered, when introduced in evidence, as an admission by defendant against its interest

9. ————: ————: ————: **Cause of Death: Bodily or Mental Infirmities: Evidence.** In an action on an accident benefit certificate, stipulating for a specified sum for the beneficiary in case of the death of insured by accident, where the evidence showed that insured died while chloroform was being administered preparatory to an operation, and an attending physician testified that the proximate cause of death was dilatation of the heart, caused by the chloroform, the fact that the physician further testified that the diseased condition of insured reduced his vitality and ability to stand chloroform was not sufficient to bring the death within an exception contained in the certificate, providing that insurer would not be liable if insured's death was caused wholly or in part by a bodily or mental infirmity or disease, even if such testimony be treated as an admission of the plaintiff.

10. ————: ————: ————: ————: ————: **Policy Provision Construed.** In such a case, the exception exempting insurer from liability if insured's death was caused wholly or in part by a bodily or mental infirmity or disease meant nothing more than that, in order for plaintiff to recover, the administering of the chloroform, and not bodily or mental infirmity, must have been the proximate cause of insured's death.

11. **FRATERNAL BENEFICIARY ASSOCIATIONS: Accident Insurance: Policies Strictly Construed.** The expressions contained in certificates issued by fraternal beneficiary associations should be defined according to the ordinary and usual understanding of their signification, and should be construed strictly against the insurer, where they narrow the range and force of the obligation.

12. **ACCIDENT INSURANCE: Death by Accident: Fraternal Beneficary Associations: Surgical Treatment: Administering of Chloroform.** The administering of chloroform by physi-

cians preparatory to a surgical operation, resulting in death, is not "surgical treatment," so as to exempt the insurer from liability under a clause of an accident benefit certificate providing that insurer should not be liable if the death resulted from surgical treatment; "surgical treatment" meaning the treating of a disease or patient by applying manual operations or instrumental appliances to the affected part, for the purpose of curing or relieving the bodily disease or ailment.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

REVERSED AND REMANDED (*with directions*).

*Wm. R. Gentry* for appellant.

(1) An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means. 4 Cooley's Law Briefs, pp. 3156-7; Joyce on Ins., sec., 2863, p. 2807; Young v. Ry. Mail Ass'n., 126 Mo. App. 325; Ripley v. Ry. Pass. Assurance Ass'n., 20 Fed. Cas. 23; Phoenix Accidental & Sick B., etc., Ass'n v. Stiver, 84 N. E. 773; Rodey v. Travelers' Ins. Co., 3 N. M. 543; Horsfall v. Pacific Mutual Ins. Co., 32 Wash. 132; Summers v. Ins. Ass'n., 84 Mo. App. 605; Life Ins. Co. v. Burroughs, 69 Pa. 43; Wilkinson vs. Travelers' Ins. Co., 72 S. W. 1016; Hamlyn v. Crown Acc. Ins. Co., 1 Q. B. 750; U. S. Mutual Acc. Ass'n v. Barry, 131 U. S. 100; Lovelace v. Ins. Co., 126 Mo. 104; Collins v. F. & C. Co., 63 Mo. App. 253; 1 Cyc. pp. 249., 250; Standard Acc. Co. v. Schmaltz, 66 Ark., 593; Western Com. Trav. Ass'n. v. Smith, 85 Fed. 401; Patterson v. Ocean Acc., etc., Co., 23 App. (D. C.) 46. (2) Death from medicine or gas is death from external, violent and accidental means. Dezell v. Ins. Co., 176 Mo. 253; Healy v. Ins. Ass'n.,

133 Ill. 526; Mutual Acc. Co. v. Tuggle, 138 Ill. 428; Travelers' Ins. Co. v. Dunlap 160 Ill. 642; Met Acc. Ass'n. v. Froiland, 161 Ill. 130; Penfold v. Universal L. Ins., Co., 85 N. 317; Paul v. Ins. Co., 112 N. Y. 472. (3) And the court will hold the insurer where there is any ambiguity or any doubt as to whether the accident is covered. The policies are always construed most strongly against the insurer. Columbia, etc., Co. v. Ins. Co., 104 Mo. App. 157; Trav. Ins. Co. v. Dunlap, 160 Ill. 462; United Zinc Co., v. Gen. Acc. Ins. Co., 128 S. W. 836; May on Ins., pp. 182-183. (4) Whether or not the deceased died as the result of surgical treatment was a question for the jury to determine. Rogers on Expert Testimony, sec. 118; Underhill on Expert Testimony, sec. 217; Singleton v. Insurance Co., 66 Mo. 61; Benart v. Lee, 46 S. W. 906; Thompson v. Thorne, 83 Mo. App. 241; 17 Cyc, pp. 684, 685, 686; Fetter v. F. &c. Co., 174 Mo. 256; McDonald v. Railroad, 219 Mo. 481. (5) Whether or not the deceased died as the result, in whole or in part, of bodily infirmity or disease, was in this case, a question for the jury. Fetter v. Ins. Co., 174 Mo. 256; McDonald v. Railroad, 219 Mo. 481. (6) It is the proximate cause that is meant by the language of the insurance policy, and if an accident is the proximate cause, the plaintiff is entitled to recover notwithstanding the facts that the same accident might not have killed another person who was stronger, or who did not have some of the deformities or abnormal conditions, which existed in the body of the deceased, as revealed by the autopsy. Fetter v. Ins. Co., 174 Mo. 256; Freeman v. Acc. In. Ass'n., 156 Mass. 351; Cyc. Vol. I. pp. 273-274; Reynolds v. Acc. Ins. Co., 22 L. T. N. S. 820; Miller v. Ins. Co., 97 Fed. 836; Continental Cas. Co. v. Lloyd, 165 Ind. 52; Patterson v. Ocean &c. Ins. Co., 23 App. (D. C.) 46; Am. and Eng. Ency of Law, 315 et seq; Lawrence v. Ins. Co., L. R. 7 Q. B., Div. 216; Driskell v. Ins. Co., 117 Mo. App. 362; Casualty Co. v. Hunt, 90 S. W. 1056. (7) The last defense set up in

the answer, that the policy provided that the defendant should not be liable for injury resulting from anything taken, administered, absorbed or inhaled, has been held entirely inoperative and ineffective in Dezell v. Fidelity & Casualty Co., 176 Mo. 253.

*Thomas G. Rutledge* for respondent.

(1) In a suit on an accident certificate the burden of proof is on plaintiff to prove death from an accident. Laessig v. Travelers' Pro. Ass'n, 169 Mo. 272; Ins. Co. v. McConkey, 127 U. S. 661; Life Ins. Co. v. Vandecar, 86 Fed. 286.   (2)   There can be no recovery for death due to chloroform volutarily taken by a patient and administered by his surgeon in performing a surgical operation, where the contract for accident insurance expressly excepts liability for death caused by the voluntary inhalation of gas or vapor or from anything accidentally or otherwise taken, administered, absorbed or inhaled.   Menneiley v. Employers L. A. Co., 148 N. Y. 596; Lowenstein v. Fid. & Cas. Co., 88 Fed. 474; McGlother v. Prov. Mut. Acc. Co., 89 Fed. 685; Kasten v. Interstate Cas. Co., 99 Wis. 73; Porter v. Pref. Acc. Ins. Co., 109 N. Y. App. 103; Waterman v. Fid. & Cas. Co., 161 Ill. 632; Paul v. Ins. Co., 45 Hun. 313, 112 N. Y. 472.   (3)   The accident insurance certificate states that there will be no liability for death caused wholly or in part by infirmity or disease.   The evidence is undisputed that Beile's death was contributed to by his diseased condition.   Therefore the court properly held there was no accident within the terms of the contract. Carr v. Pac. Mut. L. Ins. Co., 100 Mo. App. 602; Bacon v. U. S. M. Ass'n, 123 N. Y. 304; Nat Mas. Acc. Ass'n v. Shyrock, 73 Fed. 774; Com. Trav. M. Acc. Ass'n v. Fulton, 79 Fed. 423; White v. Standard, Etc., Ins. Co., 95 Minn. 77; Sharpe v. Com. Trav. M. Acc. Ass'n, 139 Ind. 92; Hubbard v. Travelers Ins. Co., 98 Fed. 932; Shanberg v. Fid. & Cas. Co., 158 Fed. 1; Continental

Cas. Co. v. Peltier, 104 Va. 222; Binder v. Accident Ass'n, 127 Iowa 25; New Amsterdam Cas. Co. v. Shields, 155 Fed. 54. (4) The certificate does not cover death when resulting from surgical treatment. Where the parties contract that death resulting from surgical treatment is not an accident, the court is bound to interpret this contract and hold that death resulting from surgical treatment is not an accident. Westmoreland v. Pref. Acc. Ass'n, 75 Fed 244; Bayless v. Travelers Ins. Co., 14 Blatchf. 143; 1 Cyc. 264; Kasten v. Interstate Cas. Co., 99 Wis. 73. (5) There was no accident within the general terms of the contract irrespective of the special exceptions of the certificate. The Young case is not a parallel case and is easily distinguished, for that policy contained no exception covering that particular mishap. Young v. Railway Mail Ass'n, 126 Mo. App. 325; Mutual Acc. Ass'n v. Barry, 131 U. S. 121; Ins. Co. v. Selden 78 Fed. 289; Schmid v. Ind. Trav. Acc. Ass'n, 42 Ind. App. 483. (6) The allegations of the petition are not sufficient to support a judgment for plaintiff. Hester v. Fidelity & Cas. Co., 69 Mo. App. 186-197. (7) The parties had a right to contract as they did and the court is bound to construe the contract as they find it. The clear unambiguous language of the contract should be given its plain, ordinary and proper meaning. McGlother v. Prov. Mut. Acc. Ass'n, 89 Fed. 685; Imperial F. Ins. Co. v. Coos, 15 U. S. 452; Ins. Co. v. McConkey, 127 U. S. 661; Ins. Co. v. Selden, 78 Fed. 289; Carr v. Pac., etc., Ins. Co., 100 Mo. App. 602.

STATEMENT.—Suit to recover five thousand dollars upon an accident benefit certificate issued to Harry F. Beile, by the defendant, a fraternal beneficiary association organized under the laws of Missouri. The plaintiff, widow of Beile, is the beneficiary. There was a verdict for $5295, the amount of the policy and interest, but on motion of defendant the trial court granted a

new trial and the plaintiff has appealed. The petition contains the usual averments, and alleges that on or about January 16, 1907, "the said Harry F. Beile was accidentally killed by chloroform while the same was being administered to him by a physician preparatory to performing a surgical operation upon him for fistula," and prayed judgment for five thousand dollars, the amount of benefits provided by the constitution and by-laws to be paid in case of accidental death. The defendant filed an answer containing a specific denial that Beile was accidentally killed and then a general denial. It next contained the following plea:

"Defendant says, among other things, it was provided in the contract set out by defendant's petition commonly known as certificate of membership, that defendant would not be liable where the death or disability to the member was the result of surgical treatment. And defendant alleges the fact to be, that on or about the 16th day of January, 1907, the said Henry F. Beile, was placed upon an operating table to be operated upon for fistula and that preparatory to said operation and as part of the surgical treatment chloroform was administered to him, from the effects of which he collapsed and instantly died."

This answer was withdrawn and a demurrer to the petition filed and overruled. Defendant then filed an answer which denies all the allegations of the petition, then admits the character of its organization, then admits issuing the benefit certificate and admits that Beile died on January 16, 1907, but denies that his death was accidental or the result of accidental causes. The answer then pleads that by the terms of the certificate the defendant was exempted from liability if Beile's death was "caused wholly or in part by any bodily or mental infirmity or disease," and then alleges that his death was so caused, and therefore the defendant is not liable. It then pleads that by the terms of the certificate the defendant was exempted

from liability if Beile's death resulted "from surgical treatment" and then alleges that it did so result, and therefore the defendant is not liable.   It then pleaded that by the terms of the certificate "defendant would not be liable to the said Henry B. Beile for any injury, fatal or otherwise, resulting to him from anything accidentally or otherwise taken, administered, absorbed or inhaled," and then alleges that his death did so result, and therefore defendant is not liable.   Reply a general denial of allegations of new matter.   At the trial the benefit certificate was admitted in evidence.   It entitled Beile "to all the benefits accruing from such membership, under the provisions of the constitution and by laws of this association, subject to the conditions printed on the back hereof, and the application for membership, all of which are made a part of this certificate.   Benefits in case of death payable to Rosa Beile his wife."   It was admitted that the constitution and by-laws contained a provision as follows:

"Article nine, section two.   Five thousand dollars shall be paid to the beneficiaries named in the certificate of any deceased member in case of death by accident."

The conditions on the back of the certificate so far as pleaded by the defendant, are as follows:

"That the Travelers Protective Association of America shall not be liable . . . in case of . . . death or disability when caused wholly or in part by any bodily or mental infirmity or disease . . . or to cases of . . . injury, fatal or otherwise, resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed or inhaled, disease, death or disability resulting from surgical treatment."

Defendant admitted that due proof of Beile's death was made to it by the plaintiff.

The abandoned answer of defendant was admitted in evidence as an admission against its interest.   The

evidence of the plaintiff showed that on January 16, 1907, Harry F. Beile voluntarily permitted chloroform to be administered to him by a physician for the purpose of rendering him unconscious to the pain of a comparatively slight but painful cutting operation then and there to be performed upon him for fistula of the anus. There were two physicians present, Dr. Bailey, who was to perform the operation, and Dr. Ward, who was to administer the chloroform. The method adopted was the "drop method," which consists in dropping chloroform gradually upon a mask placed over the man's nostrils. From twenty to thirty drops had fallen upon the mask when Beile collapsed and instantly died, without having had the knife applied to him and without surgical treatment having begun, unless administering chloroform was "surgical treatment." He was apparently in good health except the fistular condition of the anus and up to the day before he died was busy going around the city attending to his business as a cigar drummer. Dr. Ward testified that he examined Beile's heart before administering the chloroform and he seemed quite nervous and did not appear to have what witness would call "a first-class heart, that is, a perfectly normal heart," the valves of the heart appearing "imperfect," but witness considered "the heart of sufficient stength to stand the administration of an anesthetic," and considered it safe to give him chloroform. Witness discovered no other imperfections of the heart and made no tests as to any other organs. Dr. Bailey testified that after careful examination and questioning of Beile he ascertained that he drank more than was good for him, told him that physicians had to be more caustious in administering an anesthetic to persons who were in the habit of drinking to excess, and suggested a local anesthetic, such as cocaine, as a safer means.

An autopsy made of Beile's body revealed that the pleural cavity was entirely obliterated by adhesions; the right side of the heart dilated, with imperfect valves,

and the left side hypertrophied; the liver was large and congested; the spleen was about four times its normal size and congested; the left kidney was enlarged and congested, had a stone in it and was cystic, degenerated; the right kidney was almost entirely absorbed or degenerated. The dilatation of the heart was caused by the administering of the chloroform. The other symptoms were chronic.

As to whether the death of Beile was due to the administration of the chloroform or was caused wholly or in part by infirmity or disease the physicians testified in effect as follows:

Dr. Ward on his cross-examination by defendant testified that Beile's ability to take chloroform depended to some extent on the condition of his organs, but it might safely be administered with abnormal conditions present. That ordinarily twenty to thirty drops of chloroform would not produce death in a person of absolutely normal physiological condition, but it might. Abnormal conditions would have a bearing, in part contribute, but, in his opinion, Beile's death was not due to them. Upon re-direct examination, he testified that he did not think Beile would have died at that time if chloroform had not been administered, and that in his (the witness') opinion, the immediate direct cause of his death was, that paralysis of the pneumogastric nerve stopped his heart beating. Fright might have been the immediate cause of the paralysis but witness is the opinion that it was the chloroform. Upon re-cross examination he said that if these conditions had not existed his chances would have been better, but a few drops may paralyze the pneumogastic nerve and cause sudden death, even of a perfectly healthy man, without any pathological conditions of the organs whatever.

Doctor Bailey testified for plaintiff that in his opinion the immediate, direct and proximate cause of Beile's death was acute dilatation of the heart and that

the immediate cause of the dilatation of the heart was the chloroform. Upon cross-examination he stated that the chronic condition of the man's functions as disclosed by the autopsy was not exactly normal, and undoubtedly reduced his vitality and his ability to stand the chloroform, ·but he does not think that it contributed to the death; thinks that it had nothing to do with causing Biele's death, which was caused by acute dilatation of the heart. That the kidneys, the heart, the spleen and liver have nothing to do with acute dilatation of the heart, and had nothing to do with Beile's death. That there is no relation between the function of the kidneys and the ·functions of the heart, in a sudden death like Beile's. That Beile's diseased condition did not produce his death and was not in part a cause of the death. ·That "there are really as many deaths caused from anesthetics where there are no such conditions existing, and which cannot be explained by any one." The direct cause of Beile's death was acute dilatation of the heart, and it was due to psychic shock, produced by reflex action, from the laryngeal nerve in the larynx. This psychic shock is not necessarily brought about by· a diseased condition of the heart but the weakness of the heart would permit death to occur much more easily than if the heart was in a normal condition. The weakness of the other functions of the body would have nothing to do with it. Doctor LeGrand Atwood, testifying as· an expert for the defendant, said that he did not believe that the chloroform was "the predisposing cause of death." He said, "I believe that his death was consequent upon the diseased, and extraordinarily diseased, condition of the important organ, as mentioned by the attorney, and that the excitant or immediate cause was the chloroform, because the man was not in condition to withstand the effect of further depression of the heart, or interference with respiration, two vital processes. They were materially jeopardized by the diseased condition of that man's body, and constituted

a strong predisposition to death; and the immediate cause was the very slight influence which could come from twenty-five or thirty drops of chloroform, under the circumstances described." He testified that the respiration might have been interfered with by the effect of chloroform upon the nerve as testified to by Doctor Bailey and Doctor Ward. He thought it apparent that the general diseased condition of Mr. Beile "would imply the probability of his early death exclusive of extraneous influences." He found sufficient cause for the death of Beile in his diseased conditions, and thought that it could not be said that the administration of chloroform was the sole and only cause of the death of Mr. Biele. He testified that Beile's abnormal condition was not the growth of a day, but had existed for some time; was chronic. Dr. Waldo Briggs testified for defendant that in his opinion the chloroform had no effect whatever toward producing the death. As to whether the administering of the chloroform was part of the "surgical treatment," so that Beile's death might be said to have resulted from "surgical treatment," Doctor Ward and Doctor Bailey testified that they did not regard an anesthetic as a part of the operation; that the administering of the chloroform was not part of the surgical treatment; that it was only preparatory to surgical treatment. Doctor Atwood and Doctor Briggs testified that they regarded it as part of the surgical treatment.

At the close of plaintiff's evidence, the defendant asked and the court refused an instruction in the nature of a demurrer to the plaintiff's evidence. In its order granting defendant a new trial the court laid its action on the ground "that the court under the pleadings and the evidence should have given defendant's instruction in the nature of a demurrer, upon the theory that there was no evidence that the death of Harry F. Beile was occasioned by accidental means."

155 App. 41.

CAULFIELD, J. (after stating the facts).—I. In an attempt to sustain the action of the trial court the defendant asserts that Beile did not die by "accident" within the meaning of the contract, irrespective of the special exceptions of the contract. In doing so defendant relies upon cases supporting the doctrine that an injury resulting from an intentional and voluntary act, done in the usual and ordinary manner, and in the doing of which nothing unforeseen, unexpected or unusual occurs, cannot be said to have been effected by accident, although the injury itself was unusual and unexpected. It may be that according to the doctrine so invoked the action of the trial court was correct, but we are not concerned with that question. This court in a carefully considered opinion has held that the cases supporting the doctrine relied on by defendant "are not reconcilable with the general trend of the best considered American cases, which hold that accidental means are those which produce effects which are not the natural and probable consequences of the act." [Young v. Railway Mail Assn., 126 Mo. App. 325, 342, 103 S. W. 557.] In that case this court quoted with approval from Cooley as follows. "An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means." [Cooley, Briefs on the Law of Insurance, pp. 3156-7.] In the Young case, the plaintiff, while lifting a heavy mail sack, in the performance of his duties as postal clerk, ruptured a blood vessel in his lung. It was held that as the evidence tended to show that the rupture of the blood vessel was not a natural or probable effect of the lift, the question of whether his injury was caused by accidental means was for the jury. We see no reason for not applying that holding to the facts

of the case at bar.   There the rupture of the blood ves-
sel was the effect of the lift; here the dilatation of the
heart was the effect of the administering of the chloro-
form.   There the question was whether the rupture of
the blood vessel was the natural or probable effect of
the lift; here it should be whether the dilatation of the
heart was the natural or probable effect of the admin-
istering of the chloroform.   There is no reason for dis-
tinguishing between the rupture of a blood vessel and a
dilatation of the heart.   [Horsfall v. Pacific Mutual Life
Ins. Co., 32 Wash. 132.]   The only difference in this
respect between the facts of the case at bar and those
of the Young case is, that in the Young case there was
no evidence that plaintiff had a hidden disease of the
lungs, while here there is evidence of a hidden disease
of the heart and of other hidden diseases, calculated
to make dangerous the administering of chloroform.
But the difference is one of degree only.   In the Young
case the lung was not strong enough to withstand the
strain of the lift.   In this case the heart was not strong
enough to withstand the effect of the chloroform.   In
each case the organ affected was too weak, but in nei-
ther case did the person know of the weakness.   In
order for the rupture or dilatation to have been the nat-
ural and probable consequence of the lifting of the mail
sack or the administering of the chloroform, and there-
fore not an accident, it must have been a result which
was expected, or one which ought to have been expected;
and this could not be without he knew of the defects
in his heart and other organs or they were so apparent
to the ordinary powers or means of perception that he
ought to have known of them.   There is no pretense
that such is the case here.   Even his physicians, with
their learning, subjected him to the usual examination
without suspecting his terrible internal condition.   We
conclude that the trial court erred in holding as a mat-
ter of law that Beile's death was not by accident.

II.   One of the special exceptions contained in
the certificate which defendant relies upon to defeat
the plaintiff's right of recovery is one which provides
that the benefit does not cover injuries "fatal or other-
wise, resulting from any poison or infection, or from
anything accidentally or otherwise taken, administered,
absorbed or inhaled." Unfortunately for the defendant
our Supreme Court has held that "such exceptions do
not cover medicine (even though it contain poison) or
anything taken or administered in good faith to alle-
viate physical pain, even though it results in unexpected
and unintentional death." [Dezell v. Fidelity & Cas-
ualty Co., 176 Mo. 253, 292, 75 S. W. 1102.] The prin-
ciple involved in this ruling applies to the facts of this
case and we are bound to follow it.

III.   Defendant next contends that plaintiff can-
not recover because the evidence disclosed that Beile's
death was caused "wholly or in part by a bodily or
mental infirmity or disease" and was therefore within
one of the special exceptions of the contract.   In the
first place we may remark that the jury must determine
the fact as to what caused the death; the cause of death
is a fact for the jury. [Laessig v. Travelers Protective
Assn., 169 Mo. 272, 281, 69 S. W. 469; MacDonald v.
Railroad, 219 Mo. 468, 473, 118 S. W. 78.] And this
is so "even where highly scientific propositions are in-
volved." [Fetter v. Fidelity & Casualty Co., 174 Mo.
256, 266, 73 S. W. 592.] They having the privilege of
accepting or rejecting the advice of physicians under
oath on the subject. [MacDonald v. Railroad, supra,
l. c. 481.] And while the burden was upon the plain-
tiff to prove that Beile's death was "accidental" (Laes-
sig v. Travelers Protective Assn., 169 Mo. 272, 69 S.
W. 469), where plaintiffs have made out a prima facie
case showing that the insured died by accident, the bur-
den is on the defendant to prove that it resulted from
one of the excepted causes named in the certificate.

[Fetter v. Fidelity & Casualty Co. 174 Mo. 256, 269, 73 S. W. 592.] Considering this exception, then, we believe that at least a prima facie case of "death by accident" was made when plaintiff showed that Beile was in apparent good health up to the time of the administering of the chloroform; that the chloroform was taken and administered for the purpose of relieving him from the acute pain of the proposed operation; that he died while the chloroform was being administered; that in the opinion of Doctor Bailey as a witness under oath the immediate, direct and proximate cause of Beile's death was acute dilatation of the heart immediately caused by the administering of the chloroform, and that Beile's diseased condition did not contribute to his death and had nothing to do with causing it. Added to this was the fact, which the jury had a right to consider, that when defendant first answered it alleged that Beile instantly died from the effect of the administering of the chloroform and did not suggest that the death was due in whole or in part to other causes. This might be treated as an admission by defendant against its interest. It is true that Dr. Bailey admitted that the diseased condition reduced Beile's vitality and his ability to stand the chloroform, but we do not believe that this is sufficient to bring the death within the exception under consideration even if such admission be treated as an admission of the plaintiff. The language of this exception is no more favorable to the defendant's contention than was the language construed by our Supreme Court in Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 266, 73 S. W. 592. In that case the policy covered a death only if it resulted from injuries sustained through external, violent and accidental means, "independent of all other causes." The court said, "If we should give to those qualifying words of the policy the meaning that is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence. . . . The causes re-

ferred to in the policy are the proximate or direct, not the remote, causes. This was evidently the view of the trial court when it modified the second instruction asked by defendant, inserting the word "direct" before the word "cause," thereby directing the jury that they could not find for the plaintiff unless they found that "the accident was the sole and only direct cause of the death of the insured, and that view of the law was correct." A case in point on this subject is the case of Driskell v. Ins. Co., 117 Mo. App. 362, 93 S. W. 880. There the policy was in effect only "if death should result *solely* from such injuries." The court said of this: "We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result and not that it must have been so virulent in character as necessarily and inevitably to have produced that result regardless of all other conditions and circumstances. People differ so widely in health, vitality and ability to resist disease and injury, that what may mean death to one man would be comparatively harmless to another, and therefore, the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an indivdual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury." It was also

held in the cast last cited that "When evidence is introduced that points to the injury as the sole active force that brings into operation death-producing agencies, the issue of proximate cause is one of fact for the jury and not of law for the court."

We conclude that the language of the exception under consideration means nothing more than that, in order for plaintiff to recover, the administering of the chloroform and not bodily or mental infirmity must have been the proximate cause of Beile's death.

IV.    Respondent next contends that the verdict was rightfully set aside because the death was one "resulting from surgical treatment" and is therefore within one of the exceptions of the certificate.   We are unable to agree that the death did result from "surgical treatment."   As already said, these associations do business mostly with the common people and the expressions contained in their certificates should be defined according to the ordinary and usual understanding of their signification, and be construed strictly against the insurer, where they narrow the range and force of the obligation.   The Standard Dictionary defines "surgery" as "The branch of the healing art that relates to external injuries, deformities and other morbid conditions to be *remedied directly* by *manual operations* or *instrumental appliances.*"   "Surgical" is defined as being "of, or pertaining to, surgery."   "Treatment" means the act or manner of treating.   To "treat" means to "apply remedies to;" as to treat a disease or a patient.   A "remedy" is something used "for the cure or relief of bodily disease or ailment."   We gather from reading these definitions that "surgical treatment" means treating a disease or a patient by means of surgery, which, in turn, means applying manual operations or instrumental appliances to the affected part for the purpose of curing or relieving the bodily disease or ailment.   Administering chloroform as was done in

this case does not come within any of these definitions or meanings. It was not a manual operation or the application of an instrumental appliance, and was not resorted to as a remedy or for the purpose of curing or relieving Beile's ailment. It was administered as preparatory to the surgical operation, but so might have been his bath, and if he had died in his bath it would not be seriously contended that he died as a result of a surgical treatment. And the meaning of "surgical treatment," as the dictionary indicates it, is in accordance with the usual and ordinary understanding. The most that might be claimed for defendant is, that the language of the exception is so vague and general, not identifying the subject-matter, that parol evidence was admissible to indentify it, to show just what was comprehened within the term "surgical treatment," and that the jury should have been left to decide the matter as a question of fact. And this was evidently the idea of defendant's counsel at the trial, for we find that at the instance of defendant the physicians were examined as to the meaning of the term and gave conflicting opinions under oath, and the question was submitted to the jury under an instruction offered by the defendant. The jury has found that "surgical treatment" did not include the administering of chloroform under the circumstances here disclosed and we are of the opinion that its finding was in accordance with the usual and ordinary understanding of the term.

The order of the circuit court setting aside the verdict must be reversed and the cause remanded with directions to reinstate the verdict and enter judgment for plaintiff thereon as of the date when the verdict was returned. *Reynolds, P. J.,* and *Nortoni, J.,* concur.