PLEDGER v. BUSINESS MEN'S ACC. ASS'N OF TEXAS.   (No. 5775.)*

(Court of Civil Appeals of Texas. Austin. June 13, 1917. Appellee's Petition for Rehearing Granted and Judgment Affirmed, and Appellant's Petition for Rehearing Denied Oct. 17, 1917.)

1. INSURANCE ⟨⟩455—"ACCIDENTAL DEATH" —"DEATH BY ACCIDENTAL MEANS."

Where death is the result of an act, but was not designed or anticipated by the deceased, although in consequence of an act voluntarily done by him, it is accidental death, but where death is caused by some act of the deceased not designed by him or not intentionally done by him, it is death by accidental means.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident; Accidental Means.]

2. INSURANCE ⟨⟩670 — ACTION ON POLICY — FINDINGS—SPECIAL ISSUE.

In an action by the beneficiary in a mutual insurance policy, where the jury found that deceased's heart was in diseased condition, their further finding that his death might reasonably have been expected from exertion in lifting cotton bales was not material on the question whether he could have reasonably anticipated such result from the facts known to him.

3. INSURANCE ⟨⟩455—"ACCIDENTAL DEATH."

Where the insured under a mutual insurance policy was shown to have died from a rupture of the heart caused by his lifting cotton bales,

and it appeared that he was in apparent good health at the time, and did not know that anything was the matter with his heart, and was accustomed to lifting cotton bales, and had not before that time suffered any harmful results therefrom, and did not anticipate any injury from lifting the cotton bales at the time and in the manner he did, his death was accidental.

4. INSURANCE ⟨⟩464—ACCIDENTAL DEATH— "DEATH BY ACCIDENTAL MEANS."

If his act in lifting the cotton bales was just what he intended to do, and was done in the manner in which he intended, his death was not caused by accidental means.

5. INSURANCE ⟨⟩151(2), 152(1)—CONTRACT— CERTIFICATE—BY-LAWS—APPLICATION.

The application, the certificate, and the by-laws of a mutual association are all parts of the contract of insurance and full effect must be given to each if there is no ambiguity or contradiction in their terms, although in the case of such contradiction the certificate will prevail.

6. INSURANCE ⟨⟩455—MUTUAL ASSOCIATIONS —POLICY—CONSTRUCTION.

Where a mutual insurance certificate provided that amount of the certificate should be payable "in case of accidental death," a provision in the by-laws that a member shall be entitled to benefits for injuries, and his beneficiary for benefits for death of member, caused during his membership "solely and exclusively by external, violent, and accidental means," is ambiguous and, although the by-laws were made a part of the contract of insurance, should not control the plain provisions of the policy, since a plain provision in an insurance policy or certificate should not be allowed to be nullified by a lurking provision in the policy or by-laws, and one could hardly be expected to search the by-laws for such provision or even a materially qualifying provision, unless the language of the policy plainly directed him to it.

7. INSURANCE ⟨⟩455 — EVIDENCE—PRESUMPTION.

Where the meaning of accidental death in legal terminology had been well settled before a certificate of mutual insurance was issued, the insurer is presumed to have prepared such certificate with reference to such meaning.

8. INSURANCE ⟨⟩146(3) — MUTUAL ASSOCIATION—CERTIFICATE—CONSTRUCTION.

Considering an application for mutual insurance, the certificate, and by-laws as one instrument, the rule of law is that it should be construed most strongly against the insurance company.

9. INSURANCE ⟨⟩668(11)—ACTION ON CERTIFICATE—JURY QUESTION.

If a mutual insurance certificate insured only against death by accidental death, whether the death of the insured was caused solely and exclusively by accidental means *held* for the jury.

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by Minnie Pledger against the Business Men's Accident Association of Texas. Judgment for defendant, and plaintiff appeals. Reversed and remanded for another trial.

Lyndsay D. Hawkins and E. R. Pedigo, both of Austin, for appellant. White, Cartledge & Graves, of Austin, for appellee.

### Findings of Fact.

JENKINS, J. Appellee is a mutual assessment accident association incorporated under

---

the provisions of chapter 5, title 71 of the Revised Statutes. Beauregard Pledger, the husband of appellant, held a certificate issued by appellee. He was a cotton buyer, and on the 7th of December, 1915, was engaged in his usual occupation, and was looking after his cotton in his cotton yard. At about noon on that day he was seen by Roy Davis to attempt to lift a cotton bale and he let it fall. Davis went to his assistance at his call, and was told by Pledger that he had lifted several bales, and it "got next to his wind." After remaining in the cotton yard a few minutes he told Davis that he felt like he ought to go home and lie down. He left and went to his office, and in a few minutes was seized by an attack in the region of the heart, which continued until about 5 o'clock that afternoon, when he died. The case was submitted to the jury upon special issues as follows:

"Q. No. 1. Did Beauregard Pledger on December 7, 1915, and shortly before his death, lift certain bales of cotton? Answer. Yes. Q. No. 2. If you have answered the preceding question in the affirmative, then answer this question—would the death of the said Beauregard Pledger have occurred at the time it did had he not lifted said bales of cotton? Answer. No. Q. No. 3. If you have answered the first question submitted to you in the affirmative, then answer this question—did the lifting of said cotton cause the said Beauregard Pledger to suffer a rupture of his heart or heart vessels? Answer. Yes. Q. No. 4. If you have answered the next preceding question in the affirmative, then answer this question—was the death of said Beauregard Pledger caused by a rupture, if any, to his heart or heart vessels? Answer. Yes. Q. No. 5. Did the said Beauregard Pledger before lifting said bales of cotton have a diseased condition of the heart or blood vessels of the heart? Answer. Yes. Q. No. 6. If you answer question No. 5 in the affirmative, then answer this question—did the diseased condition, if any, of the heart or blood vessels of the heart of said Beauregard Pledger assist in causing his death? Answer. Yes. Q. No. 7. If you find in answer to question No. 2 that the said Beauregard Pledger would not have died at the time he did had he not lifted said cotton, and if you have further found in response to question No. 5 that said Pledger before lifting said cotton had a diseased condition of the heart or blood vessels of the heart, then you will answer this question—would the death of the said Beauregard Pledger under such circumstances have been a usual or reasonably expected result of the physical effort involved in lifting said cotton? Answer. Yes."

The findings of the jury as above set out are sustained by the evidence, except as to No. 7, and their answer to that question is true in the sense that they doubtless meant it; that is to say, that, from all of the facts and circumstances shown by the evidence and known to them at the time they answered said question, the death of said Beauregard Pledger was reasonably to be expected from the result of his physical effort involved in lifting said cotton.

### Opinion.

The controlling issue in this case is whether the deceased was insured against acci-

dental death, or only against death by accidental means. The distinction is well recognized in numerous decisions and various jurisdictions, and may be briefly stated thus:

[1] Where the death is the result of some act, but was not designed and not anticipated by the deceased, though it be in consequence of some act voluntarily done by him, it is accidental death. Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means. In other words, accidental death is an unintended and undesigned result, arising from acts done; death by accidental means is where the result arises from acts unintentionally done.

Death by accident and death by accidental means is discussed and recognized in the following, among other, cases: Bryant v. Cas. Co. (Sup.) 182 S. W. 673, L. R. A. 1916E, 945; Ins. Co. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 64; Ins. Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 50, 74 Am. St. Rep. 112; Feder v. Ass'n, 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212; Lehman v. Acc. Ass'n, 155 Iowa, 737, 133 N. W. 752, 42 L. R. A. (N. S.) 567; Shanberg v. Cas. Co., 158 Fed. 1, 85 C. C. A. 343, 19 L. R. A. (N. S.) 1206; Hood v. Cas. Co., 206 Mass. 223, 92 N. E. 329, 30 L. R. A. (N. S.) 1192, 138 Am. St. Rep. 379; Hastings v. Trav. Ass'n (C. C.) 190 Fed. 260; Niskern v. United Bro., 93 App. Div. 364, 87 N. Y. Supp. 640; Horsfall v. Ins. Co., 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425, 98 Am. St. Rep. 846; Beile v. Trav. Ass'n, 155 Mo. App. 629, 135 S. W. 497; Clidero v. Scot. Acc. Ins. Co., 19 R. 355; 29 Scott, L. R. 303.

In the case last above cited the court said:

"A person may do certain acts, the result of which acts may produce unforeseen consequences and may produce what is commonly called accidental death; but the means are exactly what the man intended to use, and was prepared to use. The means are not accidental, but the result might be accidental."

Which is to say the death may be accidental, though not caused by accidental means. Corpus Juris, vol. 1, p. 390, in defining "accident" says:

"In its most commonly accepted meaning the word denotes an event that takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore was not expected; * * * an event which under the circumstances is unusual and unexpected by the person to whom it happens."

A similar definition of accident is given in 14 R. C. L. 1238. The texts of these excellent treatises are amply supported by the numerous authorities cited in their notes.

[2] On the other hand, the means by which a result is produced can never be said to be accidental, if the act done is just what the party intended to do.

These observations are made in view of the fact that appellant contends that the event insured against was accidental death while it is the contention of the appellee that it in-

sured the deceased only against death from accidental means. The fact which appears to have been found by the jury in answer to the seventh question, namely, that knowing the diseased condition of the deceased's heart, as they did from the evidence, his death might reasonably have been expected from his exertion in lifting the cotton bales, is immaterial. The question is could he have reasonably anticipated such result from the facts known to him.

[3] The deceased is shown by the evidence to have died from rupture of the heart caused by his lifting cotton bales. He was in apparent good health; he did not know anything was the matter with his heart. He was accustomed to lifting cotton bales and had not suffered any harmful results therefrom. He did not anticipate any injury from lifting the cotton bales at the time and in the manner that he did. Under the authorities above cited, which we think comport with a common sense view of the matter, his death was accidental.

[4] On the other hand, if his act in lifting the cotton bale was just what he intended to do, and was done in the manner in which he intended, that is, if he did not slip, or unintentionally let the bale slip, or stumble or fall, and was thereby caused to exert himself beyond what he. intended, his death was not caused by accidental means.

[5] The difference between appellant and appellee as to whether or not appellee is liable on the policy sued on arises from the use of certain language in the by-laws, hereinafter set out.

The application, the certificate, and the by-laws are all parts of the contract of insurance, and full effect must be given to each if there is no ambiguity or contradiction in their terms. Laker v. Frat. Union, 95 Mo. App. 353, 75 S. W. 709. If there be any such contradiction the certificate will prevail. Davidson v. Ben. Soc., 39 Minn. 303, 39 N. W. 803, 1 L. R. A. 482; Trav. Asso. v. Branum 169 S. W. 391; 1 C. J. 416.

The application is upon a printed form prepared by appellee, and bears, among other things, the following inscription: "$5,000.00 in case of accidental death." It also contained the following declaration:

"I hereby agree that immediately upon receipt of the certificate of membership, and a copy of the by-laws of the association, I will examine them, and if satisfactory retain them. If not satisfactory I will return them to the association within three days, and my membership fee will be returned to me."

There was no other reference in the application to either the certificate or by-laws.

The certificate recites that in consideration of the application for membership, and in consideration of the admission fee paid, and the further payment of annual dues—

"to be paid as provided by the by-laws of said association * * * and of all assessments made and assessed upon him as a member of said association * * * in the case of accidental death of said member, there shall be pay-

able to Minnie Pledger (wife), of Manor, Tex., * * * the sum of $5,000.00."

The certificate, after reciting that the association reserves the right to pay said $5,000 in annual installments of $1,000 each, contains the following:

"Such annual payments shall bear interest at the rate of 6 per cent. per annum from the date of the first payment, and any and all such payments or liabilities to pay shall be, and is, in accordance with and subject to each and all of the provisions, limitations, and exceptions of the by-laws of said association, and of the provisions, limitations, and exceptions of any and all amendments, alterations, and new issues of said by-laws, which said by-laws are hereby referred to and made a part hereof as fully as if they were recited at length over the signatures hereto affixed * * * and the said Beauregard Pledger hereby, and by the acceptance hereof, agrees to abide and be bound by said by-laws and each of them, and by any and all lawful amendments, alterations, and new issues thereof or any of them."

Upon the certificate is indorsed, among other things, the following:

"The by-laws of this association are a part of your contract and a copy of same should be kept with this certificate of membership."

No other reference to the by-laws is made in the certificate.

The by-laws consist of 45 sections and cover 17 legal cap typewritten pages of the statement of facts. Section 27 of the by-laws, under the subhead of "Policies," reads in part as follows:

"Subject to the provisions, exceptions, and limitations prescribed by, and contained in, the policy issued to the members of the association, a member shall be entitled to benefits for injuries, and his beneficiary to benefits for the death of a member, caused during his membership solely and exclusively by external, violent, and accidental means, as follows: Death, $5,-000"

—followed by statements as to amounts to be paid for loss of a foot, hand, eye, etc.

Numerous exceptions to liability are set forth in this and the two succeeding sections of the by-laws, such as, if the injury does not occur in the United States, or if it occurs from infectious disease, or in the violation of law, etc., and explanations are given as to what is meant by loss of foot, eye, etc., and by disability, and other matters pertaining to loss of time from accidental injuries.

[6-8] It is upon the words "caused solely and exclusively by external, violent, and accidental means," in section 27 of the by-laws as above set forth, that appellee relies to defend liability.

It will be seen by reference to preceding statement that the application was for insurance against accidental death, and that the certificate, when considered without reference to the by-laws, insured the deceased against accidental death. Accidental death has been defined by numerous decisions of courts of last resort, and its meaning in legal terminology had been well settled before the certificate herein was issued, and the appellee is presumed to have prepared such cer-

tificate with reference to such meaning. A plain provision in an insurance policy or certificate should not be allowed to be nullified by a "lurking provision" in either the policy or by-laws. One would hardly be expected to search the by-laws for such nullifying provision, or even a materially qualifying provision, unless the language of the policy plainly directed him to it. In the instant case the reference to the by-laws and liability thereunder was in immediate connection with the time in which the appellee might make payments. The language is: "And any and all such payments, or liability to pay, shall be in accordance with and subject to each and all of the provisions, limitations, and exceptions of the by-laws." Had the insured's attention been attracted by the expression "liability," and had he read the by-laws, he would have seen that there were plainly stated therein many exceptions as to particular injuries and diseases, and limitations of liability depending upon the time and manner of making proof of death or injury, and he might well have supposed that the word "liability" in the certificate referred to those. Had his attention been attracted by section 27 of the by-laws, he would have seen that the limitation therein as to payment "for the death of the member caused solely and exclusively by external, violent, and accidental means" was "subject to the provisions * * * contained in the policy issued to the members of the association," and by examining his policy he would have seen that it plainly stated that his beneficiary should be paid $5,000, in the event of his accidental death; and he might well have concluded that as this section of the by-laws which began by saying that it was subject to the provisions of his policy it did not mean to nullify same.

We think that this section of the by-laws is ambiguous and should not control the policy.

Considering the application, certificate, and by-laws as one instrument, the rule of law is that it should be construed most strongly against the maker, and that is peculiarly applicable to insurance companies. Laker v. Frat. Union, 95 Mo. App. 353, 75 S. W. 709; Ford v. Ins. Co., 103 Tex. 522, 131 S. W. 406; Goddard v. Ins. Co., 67 Tex. 71, 1 S. W. 906, 60 Am. Rep. 1; Ben. Ass'n v. Holt, 167 Ky. 806, 181 S. W. 649.

In obedience to this rule we hold that the certificate herein insured the deceased against accidental death.

[9] The conclusion which we have reached as above set forth requires a reversal of this case. But we think it should be reversed, even if appellee's theory as to its liability be adopted. If that theory is correct, then the issue of fact to be determined by the jury was: Was the death of Beauregard Pledger caused solely and exclusively by accidental means? Appellant requested that this issue be submitted in these exact words. The court refused such request.

For the reasons stated the judgment of the trial court is reversed, and this cause is re-manded for another trial.

Reversed and remanded.