## INTERNATIONAL TRAVELERS' ASS'N v. BETTIS. (No. 7191.)

·Court of Civil Appeals of Texas. Austin. Feb. 8, 1928.

Rehearing Denied Feb. 29, 1928.

1. **Witnesses** ⬤⇒140(7)—**Heir of deceased testifying in administrator's suit on accident policy held within statute excluding testimony as to transactions with deceased (Rev. St. 1925, art. 3716).**

An heir of· deceased testifying in suit by administrator to recover under accident policy *held* within inhibition of Rev. St. 1925, art. 3716, excluding testimony as to any transactions with deceased.

2. **Witnesses** ⬤⇒159(1) — **"Transaction," within law excluding testimony as to transactions with deceased must be liberally interpreted (Rev. St. 1925, art. 3716).**

"Transaction," within meaning of Rev. St. 1925, art. 3716, excluding testimony as to transactions with deceased, must be liberally interpreted (citing Words and Phrases, Second Series, "Transaction").

3. **Witnesses** ⬤⇒159(2)—**Testimony by heir of deceased relative to injury for which recovery was sought under accident policy held inadmissible; "transaction with deceased" (Rev. St. 1925, art. 3716).**

In suit by administrator to recover on accident policy insuring deceased against accidental death, testimony by heir relative to injury received by deceased *held* inadmissible, under Rev. St. 1925, art. 3716, as constituting a

transaction with deceased within meaning of such section.

**4. Insurance ☞455 — Death from unforeseen, involuntary, and unintentional act or means is "death resulting from accidental means."**

Death resulting from act or means which is unforeseen, involuntary, and unintentional is "death resulting from accidental means."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident —Accidental.]

**5. Insurance ☞665(5)—Evidence in suit on accident policy held to sustain finding that death resulted from injury caused by accidental means.**

In suit by administrator to recover under accident policy for death of deceased, evidence *held* sufficient to sustain finding that injury causing death resulted from accidental means.

**6. Insurance ☞646(6)—Deceased will be presumed not to have intentionally or voluntarily inflicted injury upon himself.**

It will be presumed as bearing on right to recover under accident policy that deceased did not intentionally or voluntarily inflict injury upon himself.

**7. Appeal and error ☞1052(8)—Erroneous admission of evidence held harmless where prima facie case of liability was made by other evidence.**

In suit to recover for accidental death under accident policy, erroneous admission of evidence by one of heirs relative to injury *held* harmless where evidence otherwise made a prima facie case of liability against insurer.

**8. Insurance ☞665(5)—Evidence in suit on accident policy held to sustain finding that deceased was totally and continuously disabled from date of accident.**

In suit to recover for death under accident policy, evidence *held* to sustain finding that deceased was totally and continuously disabled from date of accident, particularly in view of express provision of policy making blood poisoning an accident within its terms.

**9. Insurance ☞598—Interest from date of insured's death held properly allowed at 6 per cent., in absence of provision in policy (Rev. St. 1925, art. 5070).**

In suit on accident policy, interest *held* properly allowed under Rev. St. 1925, art. 5070, at the rate of 6 per cent. from date of insured's death, in absence of rate fixed in policy.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Suit by B. H. Bettis, administrator, against the International Travelers' Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, and Wilkinson & Wilkinson, of Brownwood, for appellant.

Callaway & Callaway, of Brownwood, for appellee.

BAUGH, J. On September 4, 1925, Z. M. Bettis died of septicæmia, or blood poisoning, resulting from an infection in a wound on the top or back of the index finger on his left hand. At that time he held a health and accident insurance policy in appellant company, insuring him, amongst other things, in the sum of $5,000 against death resulting from "bodily injuries, effected directly, independently and exclusively of all other causes through accidental means." Said policy further provided that:

"Blood poisoning or septicæmia resulting directly from bodily injuries shall be deemed to be included in the said term, 'bodily injuries.'"

And further, that:

"The term, 'bodily injuries,' wherever used in this policy, shall be understood to be bodily injuries effected as described in the insuring clause."

Mary L. Bettis, wife of the deceased at the time the policy was issued, was named as beneficiary. She died intestate on April 1, 1923, long prior to the death of the insured, who also died intestate. B. H. Bettis was duly appointed administrator of the estates of both the insured and the beneficiary. Upon refusal of said insurance company to pay said policy, he brought suit as administrator, and recovered a judgment against appellant for $5,000 and interest, from which it has appealed. We are not concerned with estate of Mary L. Bettis, so far as the policy sued on is concerned, for the reason that the policy contained an express provision that:

"Indemnity for loss of life of the insured is payable to the beneficiary if surviving the insured, and otherwise to insured's legal administrator or executor."

The first proposition presented by appellant asserts error of the trial court in the admission of the testimony, over its objections, of Herman Bettis, son and heir of the deceased, Zack M. Bettis, describing in detail the manner in which the injury to deceased's finger occurred. The particular testimony included under this proposition was as follows:

"I was with father at the time he was injured. He was fixing a fence at the time he received the injury. I went down to the pasture with him, me and my father, to do some work, in the J. A. Bettis pasture, a part of the old Thomas place; no one else was with us; that place is south of Blanket; and there was a wire loose, and we started to fix it. We had two hammers, and I started to tighten one of the wires, and I put the barb in the claw of my hammer and pulled it tight, and he started to staple it, and it flew back and hurt his finger, the one he was holding the staple with, and I noticed the blood on it; I saw the wound after we left there and went to the windmill—he

showed me the wound there and made the remark about it hurting him."

Appellant's contention is that the association and co-operation of the witness with the deceased at the time and under the circumstances constituted a "transaction" with the deceased, and the witness being an heir and party to the suit, at least by representation, was prohibited from testifying thereto by article 3716, R. S. 1925, which reads as follows:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

[1] The application or interpretation of this article has been repeatedly before the courts. Practically all of the states have statutes more or less similar to ours, dealing with the subject in some manner. The purpose of these statutes is twofold: First, to prevent the living from taking advantage of the dead; and, second, to remove the temptation from the living to give false testimony that cannot be controverted because of death. Nor is it necessary that there be an adverse interest between the witness and the deceased, or between the witness and the other heirs of the deceased, in the subject of litigation. In the instant case there was none. It is sufficient to disqualify the witness if he be interested in an action by which the estate of the decedent from whom he inherits may be increased as the result of his testimony. 40 Cyc. 2285. In the instant case, the witness, not being called by the adverse party, came within the statutory inhibition, if the matter testified to constituted a "transaction" with the deceased. Clark v. Briley (Tex. Civ. App.) 193 S. W. 419; Dodson v. Watson (Tex. Civ. App.) 225 S. W. 586; Williams v. Kincannon (Tex. Civ. App.) 265 S. W. 925.

[2] The term "transaction" has been variously defined, and the trend of the decisions seems to be to give such term a liberal interpretation when dealings with decedents are involved. 4 Words and Phrases, Second Series, p. 974; 40 Cyc. 2314. In Van Wagenen v. Bonnot, 74 N. J. Eq. 843, 70 A. 143, 18 L. R. A. (N. S.) 400, the court said:

"The test laid down in our decisions in ascertaining what is a 'transaction with' the deceased about which the other party to it cannot testify is to inquire whether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge."

In Holland v. Nimitz, 111 Tex. 424, 232 S. W. 299, the following language was used:

"The object of the statute was to prohibit the interested heirs and legal representatives from testifying to any facts, or opinions, based upon observations, arising out of any transaction with the decedent which the decedent could, if living, contradict or explain."

[3] In Van Meter v. Goldfarb, 317 Ill. 620, 148 N. E. 391, 41 A. L. R. 343, the Supreme Court of Illinois held that an accident wherein the injured party was killed by being struck by an automobile constituted a "transaction" within the purview of such a statute. From these, and numerous other cases that could be cited, we think it is clear that the incident testified to by the witness Herman Bettis was a "transaction," within the meaning of article 3716, R. S. 1925, and that the testimony complained of was inadmissible.

Appellant's second proposition is as follows:

"As the policy in this case insured Zack M. Bettis, not against accidental death, but against death from injuries effected by accidental means; and as there was no evidence whatever showing liability under the terms of said policy, that is to say, showing that deceased's death was due to injuries caused by accidental means, the court should have given the peremptory instruction requested by defendant."

Herman Bettis was the only eyewitness at the time the injury occurred. Disregarding his testimony, which must be done, the following facts testified to by Dr. Cobb and Dr. Allen, who treated deceased's wound, appear to be either admitted by appellant or uncontroverted: That the deceased came to Dr. Cobb for treatment of said wound on his finger on August 30 or 31, 1925; that on the following day he called Dr. Cobb to see said wound again, and in addition called Dr. Allen also; that on the next day he again called both of said doctors on account of said wound and was taken to a hospital; that said wound was between one-fourth and one-half inch in length, and between one-eighth and one-fourth inch in width; that it was ragged, lacerated, and torn, and resulted from some external cause; that blood poisoning set up in said wound from which Mr. Bettis died on September 4, 1925; that blood poisoning usually develops in from one to seven days after injury. Clearly, the blood poisoning developed from the particular wound, or bodily injury, inflicted by some external means, which of necessity must have been violent. The degree of the violence is not material here. The only remaining question then is, Was such injury or wound effected directly through accidental means?

[4-6] Appellant has cited us to numerous cases drawing distinctions between accidental death and death caused by accidental means, and insists that appellee, plaintiff below, if the testimony of Herman Bettis be excluded, has failed to discharge the burden resting upon him to prove that said injury did occur from accidental means, and was not merely

an accidental death. The general rule is that where one does exactly what he intends to do, and death occurs unexpectedly as the result of his intentional act, such death is an accidental death. But if the act or means which itself causes the injury is unforeseen, involuntary, and unintentional, and death results therefrom, then such death is classed as "death resulting from accidental means." Pledger v. Business Men's Ass'n (Tex. Civ. App.) 197 S. W. 890; Id. (Tex. Civ. App.) 198 S. W. 810; Id. (Tex. Com. App.) 228 S. W. 110; Lewis v. Ocean Accident Corp., 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129; Husbands v. Accident Ass'n, 194 Ind. 586, 133 N. E. 130, 35 A. L. R. 1184; Hoosier Casualty Co. v. Royster, 196 Ind. 629, 149 N. E. 164, 42 A. L. R. 239. We do not deem any extended discussion of such distinctions necessary here because, excluding the testimony of Herman Bettis, under the uncontroverted facts of this case as above stated, we think the jury could have reached no other conclusion than that the injury was caused by accidental means. Under the admitted and uncontroverted facts, exclusive of the improper testimony, aided by the presumptions which the law avails to the deceased, no other reasonable conclusion could have been reached. The immediate cause of the death, blood poisoning, was definitely known; it arose from a visible flesh wound, caused by violence from some external force. At this point, in the absence of any proof to the contrary, the law aids the deceased with the presumption that he did not intentionally or voluntarily inflict such injury upon himself. 1 C. J. 495, states the rule as follows:

"Where, however, it is apparent that the injury to or death of the insured was the result of external and violent means, and the issue is as to whether it was due to an accident, within the meaning of the policy, or to some cause excepted by the policy, the presumption is in favor of accident and against the existence of facts bringing the case within any of the exceptions of the policy, such as insanity of the insured, intentional injury inflicted by a third person, lack of due care and diligence, self-inflicted injuries, and suicide."

In Preferred Acc. Ins. Co. v. Fielding, 35 Colo. 19, 83 P. 1013, 9 Ann. Cas. 916, the Supreme Court of Colorado holds that, in view of the presumptions against self-inflicted injuries and violations of the law, the plaintiff made a prima facie case of death from "bodily injuries caused solely by external, violent, and accidental means" when death by unexplained violent external means was shown. To the same effect are Jenkin v. Pacific Mut. Life Ins. Co., 131 Cal. 121, 63 P. 180, by the Supreme Court of California, Wilkinson v. Ætna Life Ins. Co., 240 Ill. 205, 88 N. E. 550, 25 L. R. A. (N. S.) 1256, 130 Am. St. Rep. 269, and Merkel v. Railway Mail Ass'n, 212 Mo. App. 632, 254 S. W. 372. The same rule is also announced by the Supreme Court of Nebraska in Hornby v. State Life Ins. Co., 106 Neb. 575, 184 N. W. 84, 18 A. L. R. 107, by the Supreme Court of Arkansas in Ætna Life Ins. Co. v. Little, 146 Ark. 70, 225 S. W. 298, and in following Texas cases: Georgia Casualty Co. v. Shaw (Tex. Civ. App.) 197 S. W. 316, and Fort Worth Mut. Benev. Ass'n v. Jennings (Tex. Civ. App.) 283 S. W. 910. In most of these cases death resulted immediately from the violence itself, but we see no difference in principle in applying such rule whether the violence be great or small, if death result directly therefrom.

[7] The insurance company introduced no evidence whatever in the instant case. In the absence thereof and of any facts or circumstances tending to indicate that the deceased's injury was voluntarily self-inflicted, aided by the legal presumption of accident and the application of the universal rule that said policy should be construed most favorably to the insured, we are of the opinion that appellee made a prima facie case of liability against appellant without the testimony of Herman Bettis, and that its erroneous admission was therefore harmless.

[8] Under its third proposition, appellant insists that appellee not only failed to show that the deceased was "totally and continuously disabled from the date of the accident," but that the evidence showed the contrary. There is no merit in this proposition. There was, we think, sufficient competent evidence upon which the jury found in favor of the appellee on this issue, even if the "date of accident" be taken as the date of the cut on deceased's finger. But that date was not the controlling date. The policy required disability from "the *date of accident*." But it expressly included within the term "bodily injury" septicæmia, thus making blood poisoning itself (provided it arose from the source therein named, and it is undisputed in this case that it did so arise) an *accident* within the terms of the policy. The *date of accident* thus covered is fixed by and from the time the blood poisoning malady arose, and the time intervening between the date of the cut on deceased's finger and the time the fatal malady fixed its grip upon him is immaterial. It is uncontroverted that deceased was disabled after the blood poisoning began its ravages upon him and brought his untimely death three or four days thereafter.

[9] We also overrule appellant's fourth and last contention that the court erred in awarding interest on the amount of the policy at 6 per cent. from the date of the insured's death. There was no error in this. This being a suit upon a written contract for a specific amount, and that amount having matured upon the death of the insured, plaintiff was entitled under his prayer therefor, to recover 6 per cent. interest from that date, there being no rate fixed in the policy. Ar-

ticle 5070, R. S. 1925; American Woodmen v. Smith (Tex. Civ. App.) 251 S. W. 308; Atkinson v. Jackson Bros. (Tex. Civ. App.) 259 S. W. 280; Davis v. Rush (Tex. Civ. App.) 288 S. W. 504.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.